**UNITED STATES, Appellee,**

v.

**Ronald CLIFTON, Specialist Five, U.S. Army, Appellant.**

**No. 41,636.**
**CM 440047.**

U. S. Court of Military Appeals.

Feb. 14, 1983.

For Appellant: *Captain Kenneth G. Gale* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major James F. Nagle, Captain Edwin S. Castle* (on brief); *Colonel William G. Eckhardt.*

For Appellee: *Captain Gary L. Hoffman* (argued); *Colonel R.R. Boller, Major John T. Edwards, Major Michael L. DeBusk* (on brief).

*Opinion of the Court*

COOK, Judge:

Appellant was tried by a general court-martial composed of officer members, convened at Stuttgart, Federal Republic of Germany. Contrary to his pleas, he was convicted of rape and adultery, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934, respectively. He was sentenced to a dishonorable discharge, confinement at hard labor for 3 years, total forfeitures, and re-

duction to E–1. The convening authority approved the sentence. The United States Army Court of Military Review set aside the findings of guilty of adultery and reassessed the sentence, reducing the confinement to 30 months, but otherwise affirming the sentence. 11 M.J. 842 (1981) We granted review of the following assigned issue:

WHETHER THE APPELLANT WAS PREJUDICED BY IMPROPER COMMENTS CONTAINED IN THE TRIAL COUNSEL'S CLOSING ARGUMENT.

I

The prosecutrix, an 18-year-old German national, testified that she was hitchhiking home after a school class. She was on her way to meet her boyfriend, with whom she had been intimate.[1] Appellant happened along in his automobile and picked her up. However, rather than dropping her off at her village as she requested, appellant passed through the town and several others. After repeated requests by the prosecutrix to stop, appellant finally turned the car around and started back. Before reaching her village, appellant turned his vehicle off the road and drove across a field path at a high rate of speed. After stopping the car in an isolated area, appellant made advances toward her. She tried to flee, attempted to fight him off, feigned illness, and offered a variety of other excuses. Appellant resorted to force and threatened to kill her. Ultimately, she realized that she could not stop him, so she decided to cooperate and get it over with as quickly as possible. Though the intercourse was painful to her, she tried to create the impression that she was enjoying it to avoid further injury.

Afterward, appellant drove her to her town. On the way, he asked to see her again, and, while she was getting out of the car, he asked her again. In order to assure her get-away, she said, "Sunday, two o'clock." However, once out of the car, she walked directly to a gasthaus and reported the rape. The proprietress of the gasthaus

1. Mil.R.Evid. 412, which purports to limit substantially the admission of evidence of an alleged rape victim's past sexual behavior, was not yet in effect at the time of appellant's trial.

described her variously as "[d]isheveled," "[o]ut of shape," "crying," "shaking," and "at a loss with her nerves."

German police officials testified that, pursuant to the prosecutrix' report, they set a trap for appellant, using the prosecutrix as bait. On Sunday at two o'clock, the victim was positioned at the roadside, while plainclothed German police officers in unmarked vehicles stood by. At the appointed hour, appellant appeared in his automobile and drove directly up to the prosecutrix. A police vehicle cut in front of appellant's car, and the officers got out. But before other officers could close the trap, appellant managed to back his car out and drive off at a high rate of speed. The officers radioed ahead to colleagues in the next town, who observed appellant's approach. According to the officers, when appellant saw their marked police van, he suddenly executed a high speed turn into a side street. However, the officers, taking another route, succeeded in cutting appellant off. As he was being apprehended, appellant inquired what the officers wanted of him, maintaining that he had done nothing wrong. Later appellant made a statement to the German police in which he claimed that the prosecutrix had twice willingly engaged in intercourse with him and had, on her own initiative, performed fellatio on him.

On the witness stand, appellant admitted that his pretrial statement was untrue in several respects. In particular, he conceded that the prosecutrix had not performed fellatio on him and that they had only made love once. He insisted that the prosecutrix had willingly consented to his advances and that he never threatened her or offered force. He explained that he fled on Sunday only because he thought the police officers were irate relatives of the prosecutrix and were intent on harming him. He denied seeing the police van that the officers testified he had tried to evade.

2. His timely motion for a mistrial was denied by the military judge.

II

During argument on findings, trial counsel made a series of remarks which appellant challenges.[2] With respect to the adultery specification (subsequently dismissed by the Court of Military Review), trial counsel sought, by the following analogy, to persuade the members to infer prejudice to good order and discipline in appellant's conduct:

Incidentally, heroin is also charged as an Article 134 violation. How many heroin prosecutions have you sat into [sic] where the government put on any evidence that possession of heroin was prejudicial to the good order and discipline of the Army? None. It can be inferred from the circumstances; the same with this case.

Not surprisingly, appellant objects to the linkage between adultery and heroin.

Elsewhere trial counsel commented (properly, appellant concedes) on appellant's admittedly false pretrial statement. However, appellant complains that trial counsel went on to imply that appellant was a liar simply because his testimony was at odds with the Government's evidence and theory of the case. Indeed trial counsel went so far as to prophesy: "He [appellant] lied in here and he'll lie again."

Appellant also protests trial counsel's invitation to the court members to "notice . . . [defense counsel's] effort to keep . . . [the prosecutrix'] full statement from the jury; her full statement which would have shown all the facts in the case."

Finally, appellant complains of trial counsel's "testifying"[3] to the members in the following manner:

[N]ow the defense comes in and says, who would make a date with a victim of a rape? Well, it's not all that uncommon. It happens all the time. A lot of rapists believe that there's some kind of irresistability about their sexual impulse, and even though he very well believed that he raped her, he might have thought that

3. Earlier in the proceedings, the military judge had refused to permit the Government to present the testimony of a psychologist who was experienced in the area of rape counseling.

she liked the rape; and she gave him reason to think she liked the rape. She was honest about that. She didn't say she disliked it. He may have thought that, great, I raped her, but she loved it, therefore I'll make a date with her. Women like to be pushed around. Common rape fantasies.

These foregoing matters, appellant contends, deprived him of a fair trial.

We agree that appellant's conviction cannot stand. Actually, appellate defense counsel have been too kind and have omitted to point out several of trial counsel's more egregious misstatements. For example, referring to a point in the court-martial at which appellant broke down and cried in court, trial counsel exhorted the members:

Don't feel sorry for the accused. The fact is, *he had asserted his rights. He had been represented by counsel. He's fought this every inch of the way.*

(Emphasis added.)

Referring to appellant's admittedly false pretrial statement, trial counsel observed:

He was pretty cagey, *just like he was cagey on the stand. He didn't admit to anything.*

(Emphasis added.)

Testifying again, or perhaps merely presuming to instruct on the law, trial counsel declared:

Now to the matter of the flight; historically in all these texts like Wigmore, flight is offered to show a consciousness of guilt, and therefore guilt itself. In other words, innocent men don't flee. If you've got nothing to hide, you don't run from the police.

Commenting on the prosecutrix' ultimate decision to play along with appellant, trial counsel seemingly testified:

These things happen in rapes all the time. These things happen to people that resist. This one nurse said in a rape case, a victim, she said, I'm a nurse and I've been in a hospital and I've seen too many rape victims who tried to fight off the rapist,

so I submitted.... Military Juries [sic] are known throughout the world to be fair and follow the Judge's instructions.

Needless to say, no nurse testified in the instant case.

Finally, dismissing unquestionably legitimate defense argument, trial counsel sniped:

Now ... [defense counsel] argued well, however *it's an old defense saw,* that if you can't win on the law, and you can't win on the facts, *talk for a long, long time about reasonable doubt.*

(Emphasis added.)

In fairness, though he never halted trial counsel's argument, the military judge did caution the members to disregard trial counsel's comment regarding the defense's alleged effort to keep the victim's full statement from the court,[4] and he advised the members that the references to drugs and the nurse were "for illustration only" and not for any other purpose. Further, the military judge gave what appeared to be the standard instruction that argument of counsel was not evidence. The judge did not, however, advert to trial counsel's repeated references to appellant's exercise of his constitutional and codal rights.

## III

It is axiomatic that a court-martial must render its verdict solely on the basis of the evidence presented at trial. *United States v. Bouie,* 9 U.S.C.M.A. 228, 26 C.M.R. 8 (1958). A corollary to this principle is, as the judge instructed, that counsel's arguments are not evidence. The reasons are obvious: arguments are not given under oath, are not subject to objection based upon the rules of evidence, and are not subject to the testing process of cross-examination. If the rule were contrary, an accused's right of confrontation would be abridged, and the opportunity to impeach the source denied. *See generally McCormick's Handbook on the Law of Evidence* §§ 33 *et seq.* (2d ed. 1972). When counsel

---

4. Actually, we are unable to locate in the record any instance of an attempt by the defense to suppress or restrict portions of the victim's statement.

argues facts not in evidence, or when he discusses the facts of other cases, he violates both of these principles. *See* para. 72 *b,* Manual for Courts-Martial, United States, 1969 (Revised edition). When trial counsel here discoursed on the practices and fantasies of rapists, and when he described the attitudes of unrelated rape victims, he was not drawing upon legitimate inferences from evidence of record or appealing to the common sense of the court-martial. He was inviting the members to accept new information as factual, *based on his authority.* Such communication was improper and should have been stricken.

 It is also firmly established that counsel may not, except when arguing before a military judge alone, cite legal authority. Para. 72*b,* Manual, *supra; United States v. Johnson,* 9 U.S.C.M.A. 178, 25 C.M.R. 440 (1958); *United States v. McCauley,* 9 U.S.C.M.A. 65, 25 C.M.R. 327 (1958); *United States v. Fair,* 2 U.S.C.M.A. 521, 10 C.M.R. 19 (1953). Thus, it was inappropriate for trial counsel to invoke Wigmore to buttress what may otherwise have been acceptable common sense argument.

 In addition, it is improper for counsel to seek unduly to inflame the passions or prejudices of the court members. *United States v. Shamberger,* 1 M.J. 377 (C.M.A.1976); *United States v. Nelson,* 1 M.J. 235 (C.M.A.1975). Trial counsel's conjugation of adultery with heroin and his proclamation that appellant would lie again [5] fell within this category.

 These errors standing alone, while disturbing, may not have been sufficient to justify the extreme remedy of reversing appellant's conviction. However, we deem the remaining errors to be of such

gravity as to divest this court-martial of the most fundamental elements of military justice. In the first place, it was grossly improper for trial counsel to cite evidence allegedly excluded from the court-martial's consideration or to suggest that there was other evidence that might have been adduced. *United States v. Tackett,* 16 U.S.C. M.A. 226, 36 C.M.R. 382 (1966); *United States v. Edwards,* 39 C.M.R. 952 (A.F.B.R. 1968). Furthermore it was unconscionable for trial counsel repeatedly to emphasize appellant's assertion of his rights. A servicemember may "assert his rights" without fear of exploitation. He is permitted, even encouraged, to "fight" a criminal charge "every inch of the way." [6] He is not obligated to "admit to anything," upon being accused of wrongdoing. U.S. Const. Amend. V; Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831. He may seek representation of counsel without fear of retribution. U.S. Const. Amend. VI. And he need apologize to no one for putting the Government to its burden; thus he may "talk for a long, long time about reasonable doubt." *See In Re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1070–73, 25 L.Ed.2d 368 (1970), and the cases cited therein.

What trial counsel may have intended to convey is unclear. What he in fact conveyed is clear: An innocent man has nothing to hide, no reason to exercise his rights; the fact that appellant sought refuge behind his rights suggests he was not innocent. *United States v. Moore,* 1 M.J. 390, 391 (C.M.A.1976).

 As indicated, a court-martial must render its verdict solely on the basis of the evidence properly before it. *United States v. Bouie, supra.* The Government may not,

**5.** In view of the circumstances of this case, we need not decide whether trial counsel's assertion that appellant was a "liar," beyond specific reference to appellant's false pretrial statement, was error. Suffice it to say, this is a dangerous practice. As a general matter, "It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence." ABA Standards, The Prosecution Function § 5.8(b) (1971). *Compare United States v.*

*Doctor,* 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956), *with United States v. Knickerbocker,* 2 M.J. 128 (C.M.A.1977).

**6.** "MJ: (To accused) ... You are legally entitled to plead not guilty, even though you believe you are guilty, and thus place upon the prosecution the burden of proving your guilt beyond reasonable doubt." Para. 3–1, Department of the Army Pamphlet 27–9, *Military Judges' Guide* (1969).

either directly or by implication, attempt to sustain—or circumvent—its burden of proof by capitalizing on an accused's exercise of his rights. The curative efforts of the military judge here were too little and too late. The decision of the United States Army Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge EVERETT and Judge FLETCHER concur.