UNITED STATES

v.

**Airman Basic Joel S. MARTINEZ,
FR 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, United States
Air Force.**

**ACM 27712.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 April, 1989.

Decided 15 June 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Captain Darla G. Orndorff and Captain Laurence M. Soybel.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie and Captain Morris D. Davis.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

We authorize a rehearing on sentence in this case. The trial counsel impermissibly argued a theory of the case which was forclosed to him; his argument may well have affected the sentence.

### Factual Setting

Airman Basic Martinez, the appellant, was tried for murder, in violation of Article 118, UCMJ, 10 U.S.C. § 918. He was involved in a cocaine smuggling operation. His associates included foreign nationals and other United States military members. One member of the ring, Army Sergeant (E–5) Calderon, had a serious falling out with the group; he claimed they were cheating him out of some profits. On the evening of 10 June 1987, the gang agreed to meet in an apartment in Panama City, Panama to resolve his complaint. The appellant decided to bring his .45 calibre semi-automatic pistol to the meeting.

Calderon and several others were already at the apartment when the appellant arrived. A heated discussion was underway. A total of three shots were fired from the pistol. One shot entered Calderon's head. A second shot appears to have struck him in the back.

Martinez asserted during his guilty plea inquiry that Marquez, a civilian participant, shot Calderon. He admitted that he fired the gun once. He further conceded that he took his pistol to the meeting knowing that it would be used to threaten or murder Calderon. Finally, he admitted that he intended to support the organization regardless of the consequences—even if Calderon would be murdered.

The appellant assisted in removing Calderon's body from the apartment. Calderon was still breathing but died soon after. The car was abandoned in Panama City. The appellant disposed of the murder weapon by throwing it into a river.

### Pretrial Agreement

Martinez was originally charged with premeditated murder. The case was referred as capital. Eventually, a pretrial agreement was hammered out between the appellant and the Government. Its significant terms were:

(1) Martinez would plead guilty by exceptions and substitutions to the following Charge and specification:

Charge: Violation of Article 118, UCMJ.

Specification: In that Airman Basic Joel S. Martinez, then Staff Sergeant Joel S. Martinez ... did, in the Republic of Panama, on or about 10 June 1987, murder Sergeant (E–5) Gilberto Calderon, United States Army, *by means of taking his personal handgun to a meeting and providing his handgun to those present with the knowledge that it would be used to threaten or kill Gilberto Calderon and did thereafter assist in the disposal of Gilberto Calderon's body.*

(emphasis added).

The agreement continued: "I understand that I am offering to plead guilty as a principal to the murder of Gilberto Calderon by aiding and abetting his murder."

(2) The case would be tried as non-capital.

(3) A separate Article 78 offense (accessory after the fact) would be dismissed.

(4) The pretrial agreement "will not preclude the government from offering any additional evidence."

(5) Martinez's signature on the agreement recognized *"that the government will argue that I shot Gilberto Calderon"* (emphasis added).

(6) The sentence was capped at a dishonorable discharge, 27 years confinement, and total forfeitures.

(7) The parties reached an agreement on a Stipulation of Fact. The stipulation, as ultimately presented in court, included concessions by Martinez that "Calderon was shot in the head by a member of the group with my pistol" and that "I fired the pistol at some time during the evening."

After receiving the staff judge advocate's advice, the convening authority approved and accepted the instrument, including its sentence cap.

### The Court–Martial

At trial, everything proceeded as planned. After a painstaking guilty plea inquiry, the military judge accepted the pleas. Thereupon, the trial counsel retracted the capital referral of the case on behalf of the convening authority, withdrew the Article 78, 10 U.S.C. § 878 accessory allegation, and modified the pertinent portion of the Article 118 specification. Trial counsel clarified that modification on the record as follows:

> The language with, "premeditation" [sic] is withdrawn. *The words "shooting him with a gun" are withdrawn.* Substituting therefore, "taking his personal handgun to a meeting and providing his handgun to those present with the knowledge that it would be used to threaten or kill Calderon and did thereafter assist in the removal of Gilberto Calderon's body."
>
> Your Honor, with the amendments, the accused may be found guilty as charged.

(emphasis added).

The military judge accepted the appellant's pleas. He commented that "with the modifications to the specification which is in accordance with the pleas of exception and substitution entered by the accused, the only charge and specification before the court is that to which the accused has entered pleas of guilty."

The judge then found the appellant guilty "in accordance with your pleas of guilty." No further evidence or facts or circumstances was offered as to findings.

The prosecution's initial sentencing argument was extremely short. The defense then suggested a maximum of 10 years confinement and made other argument on behalf of the appellant.

In rebuttal, the prosecution powerfully advanced a sentencing argument based on what was envisioned in Item 5 of the pretrial agreement, above. Trial counsel drove home the theme that the appellant was the "hit man" or perpetrator, not simply an aider and abettor:

> Defense counsel says that he was not the trigger, Your Honor. The evidence suggests exactly that he was a trigger man.... This man's .45 caliber pistol blew his brains out all over the floor of that apartment.... He wants us to believe that these dangerous people were having an argument and a confrontation. And, during that argument and confrontation, he gives away his protection. He gives away his piece ... to someone who might have pulled the trigger at him. Your Honor, that is nonsense. That is ludicrous. He kept that weapon. He kept it in his hand. He took it to Gilberto Calderon's head and between the distance of 24 and 36 inches, he fired it and blew his brains out. That is what happened ... he had that pistol that he used to kill Calderon. This is the man who wants us to believe, whose counsel wants us to believe, that he was afraid.... This is a man who is bad company. Who is dangerous.... Your Honor, what do you do to somebody who willfully, for money, for profit, destroys the lives of other human beings. Somebody who can take a pistol and put it 24 inches, 36 inches away from another man's head and pull the trigger....

The military judge sentenced the appellant to a dishonorable discharge, total forfeitures, and confinement for life. He then examined the pretrial agreement and found it in compliance with public policy. All

agreed that confinement would be "capped" at 27 years.

The military judge never indicated that he disregarded this prosecution sentencing argument in his deliberations.

### Analysis

■ We hold that the trial counsel erred to the substantial prejudice of the appellant by arguing repeatedly on sentencing that the appellant was not simply an aider and abettor but was the actual perpetrator, *i.e.,* the "trigger man."

The bargain between the parties is crystal-clear. Martinez's responses during the guilty plea inquiry (as well as the overall posture of his defense team) indicate a vigorous strategic effort to avoid a capital trial and sidestep a court-martial premised upon the words "by means of shooting him with a gun." From the draft pretrial agreement contained in the record of trial to the appellant's plea in court, this defense goal could not be more straightforward: "To the excepted words, Not Guilty." The defense succeeded. At trial, in accord with the appellant's pleas and the pretrial agreement, the words "shooting him with a gun" were withdrawn. The military judge's announcement as to this matter was unequivocal—Martinez was not guilty of the excepted matter but guilty of the substituted matter.

It follows that a perpetrator theory of the case was specifically foreclosed by the military judge's findings. *See United States v. Moore,* 47 C.M.R. 466 (A.F.C.M.R. 1973); *United States v. Moser,* 41 C.M.R. 999, 1001 (A.F.C.M.R.1970) (numerous authorities cited); *see also United States v. Watkins,* 21 M.J. 224, 226 n. 2 (C.M.A. 1986); *United States v. Nedeau,* 7 U.S.C.

M.A. 718, 23 C.M.R. 182, 184 (1957). In parallel areas, we find civilian authorities in accord. *See Illinois v. Holiday,* 21 Ill. App.3d 796, 316 N.E.2d 236, 239 (1974); *Michigan v. Frencavage,* 231 Mich. 242, 203 N.W. 660, 661 (1925); Annot., 87 A.L. R.2d 271 (1953).

We cannot envision an analysis which would allow a sentencing argument that Martinez was the "trigger man." *That very theory had been foreclosed when the military judge accepted the guilty plea by exceptions and substitutions.**

What was the purpose of the pretrial agreement clause, quoted earlier, reserving to the Government the right to "argue" that the appellant actually shot Calderon? Giving the pretrial agreement language a fair interpretation, we can only surmise that the Government intended to: (a) allow the appellant to plead to the lesser theory of guilty as an aider and abettor; but (b) reserve the right to produce additional evidence (or simply argue circumstantially) and thus preserve a more serious theory of guilt. The difficulty here is that such a theory must be pursued in the *findings* portion of the trial. As emphasized earlier, once the military judge entered findings on the lesser theory of guilt, the prosecution was precluded from advancing a more serious theory during sentencing.

### Testing for Prejudice

[2] The prosecution sentencing argument drove home the theory that the appellant should be sentenced as the "hit man." The military judge never stated that he would disregard such argument. Thus, we have no way of telling whether the appellant was sentenced as a perpetrator or as an aider and abettor.

---

* We reject any suggestion that the two theories—perpetrator versus aider and abettor—are equally viable, after the military judge's findings by substitutions and exceptions, as merely different means by which the crime of homicide can be committed. *See Hart v. State,* 464 So.2d 592, 594 (Fla.App.1985); *Brager v. Missouri,* 625 S.W.2d 892, 895 (Mo.App.1981); *see also Marquez–Anaya v. United States,* 319 F.2d 610, 612 (5th Cir.1963).

Moreover, we know of no civilian authority for the proposition that a defendant can be found guilty of one crime yet punished for a second crime, or upon a different theory of criminality. Even if such practice might be permitted in civilian courts, we could not sanction it in a court-martial. *See* R.C.M. 910(g). By way of analogy, we note that a military accused cannot plead guilty and simultaneously offer evidence inconsistent with that plea. *See, e.g., United States v. Clark,* 28 M.J. 401 (C.M.A. 1989), citing *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Improper argument by trial counsel does not necessarily require corrective action by an appellate court. *See United States v. Gerlach,* 16 U.S.C.M.A. 383, 37 C.M.R. 3 (1966); *United States v. Schiller,* 8 M.J. 552, 554 (N.C.M.R.1979). Rather, we test for prejudice. We note that the military judge sentenced the appellant to life imprisonment; the appellant then got the benefit of the "cap" of 27 years.

Under *United States v. Sales,* 22 M.J. 305, 309 (C.M.A.1986), we believe a rehearing on sentence is mandated. We cannot be assured that the military judge would have adjudged the same sentence absent the error. Upon the "aider and abettor" theory, he might have, for example, sentenced the appellant to a dishonorable discharge, 25 years confinement, and accessory penalties. Nor can it be said that the prosecution argument was so insignificant as to be devoid of persuasiveness.

It is not for this Court to conjecture as to what the sentence would have been had the improper argument been excluded. The findings of guilty are correct in law and fact and are affirmed. The sentence is set aside. The record is returned to The Judge Advocate General for remand to the convening authority. A rehearing on sentence may be ordered.

Senior Judge MURDOCK concurs.

Senior Judge BLOMMERS (dissenting):

The unlawful taking of a human life is undoubtedly the most heinous criminal act in our American society. I find the facts and circumstances surrounding the death of Sergeant Gilberto Calderon to be repugnant and aggravated, even though this was a crime committed among thieves, so to speak.

I need not reach the question as to whether trial counsel's argument was legally impermissible, for the sentencing issue can be resolved, in my judgment, by simply presuming that error was committed. Under the facts of this case, the appellant's sentence "cap" of 27 years confinement removes *any* possibility of prejudice to his substantial rights. Article 59(a), UCMJ, 10 U.S.C. § 859(a). *See also Unit-*

*ed States v. Tucker,* 29 M.J. 915 (A.C.M.R. 1989). Even if the error was to be considered of constitutional dimension, which it is not, I am convinced not only beyond reasonable doubt, but beyond any doubt, that, absent trial counsel's argument as to guilt of the greater offense, the military judge would have adjudged a sentence which exceeded that provided for in the pretrial agreement. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990); *United States v. Sales,* 22 M.J. 305 (C.M.A.1986). I am equally convinced that the convening authority would not have reduced the sentence below that provided for in the agreement.

I would affirm the findings of guilty and the sentence as approved by the convening authority. There is no need for a rehearing on sentence.