UNITED STATES, Appellee

v.

Andrew P. HALPIN, Airman Basic
U.S. Air Force, Appellant

No. 12-0418

Crim. App. No. S31805

United States Court of Appeals for the Armed Forces

Argued October 24, 2012

Decided February 13, 2013

STUCKY, J., delivered the opinion of the Court, in which BAKER, C.J., and RYAN, J., joined.  ERDMANN, J., filed a dissenting opinion, in which EFFRON, S.J., joined.


Counsel


For Appellant:  Captain Luke D. Wilson (argued).


For Appellee:  Captain Brian C. Mason (argued); Colonel Don M. Christensen, Lieutenant Colonel C. Taylor Smith, and Gerald R. Bruce, Esq. (on brief).


Military Judge:  Joseph S. Kiefer


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Halpin, No. 12-0418/AF

Judge STUCKY delivered the opinion of the Court.

We granted review to consider three questions surrounding trial counsel's sentencing argument: (1) whether the argument constituted prosecutorial misconduct; (2) whether the military judge erred in failing to stop the argument and issue a curative instruction; and (3) whether the defense counsel rendered ineffective assistance of counsel by failing to object to the argument. We hold that Appellant has not met his burden of showing that he was prejudiced by trial counsel's arguments. We therefore affirm the decision of the United States Air Force Court of Criminal Appeals.

I.

In exchange for the convening authority's agreement to refer this case to a special court-martial, Appellant pled guilty to and was convicted of one specification each of failure to obey a lawful order, wrongful use of Adderall (a Schedule II controlled substance), adultery, and reckless endangerment, in violation of Articles 92, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a, 934 (2006). A panel of officer members sentenced Appellant to a bad-conduct discharge, confinement for ten months, and a reprimand. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals (CCA) affirmed. United States v. Halpin, No. S31805, 2012 CCA LEXIS 43, at *18–*19, 2012

WL 377232, at *7 (A.F. Ct. Crim. App. Feb. 1, 2012) (unpublished).

## II.

### A.

At the time of the offenses, Appellant was a nineteen-year-old airman basic assigned to Davis-Monthan Air Force Base, Arizona. He was married to CH, but they were separated. On November 25, 2009, Appellant invited CH to the apartment where he was staying during their separation. When she arrived, Appellant had prepared dinner and they enjoyed a romantic evening together. Appellant and CH had sexual intercourse, and then began to argue. The argument escalated and Appellant told CH he wanted a divorce. CH became very upset, retrieved a bottle of the anti-depressant Lorazepam from her purse, and proceeded to swallow approximately sixty pills. Appellant watched CH swallow the pills, and told her "[Y]ou're not going to die in my apartment." CH responded that Appellant was "going to watch [her] die." Soon after the overdose, CH was unable to walk and her speech became heavily slurred. Appellant drove CH to her home, carried her inside, and put her to bed, placing his Air Force jacket on top of her before leaving. Appellant returned to his apartment and went to bed without calling for help for CH. The next morning a friend discovered CH, learned of the overdose, and called an ambulance. CH was treated in the

3

emergency room and subsequently received five to six days of inpatient mental health treatment. Based on these events, Appellant pled guilty to recklessly endangering CH by taking her to her house and leaving her alone rather than seeking medical attention after observing her attempted suicide.

On the day CH was admitted to the hospital, Appellant engaged in consensual sex with another airman, A1C Hayden. After learning of CH's suicide attempt and Appellant's relationship with A1C Hayden, Appellant's commanding officer issued no contact orders prohibiting Appellant and A1C Hayden from communicating with one another. However, Appellant continued to communicate with, see, and engage in consensual sex with A1C Hayden. On these facts, Appellant pled guilty to adultery and failure to obey a lawful order.

In his stipulation of fact, Appellant also admitted to crushing and snorting Adderall, a Schedule II controlled substance. CH had a prescription for Adderall, and Appellant took pills from her prescription without her consent. At various times he snorted the Adderall with another airman. On these facts, Appellant pled guilty to wrongful use of Adderall.

B.

The granted issues concern trial counsel's closing arguments at sentencing. With regard to the reckless endangerment charge, trial counsel argued that

4

only [Appellant] himself knows why he acted in . . . such a callous and wanton manner that night. And only he knows whether or not he was actually hoping or wanted [CH] to die but one could certainly argue that this would have worked out pretty well for him if she had passed away. The arguments would stop. The impending divorce, expense and effort of it would be saved. Potentially, he could collect on her SGLI payout.

Trial counsel also described the scene at CH's home when she was discovered the next day by her friend, covered by Appellant's Air Force jacket, wearing the wedding rings she usually kept in her purse, with a pile of pill bottles on the dresser. Trial counsel asserted,

Now, there are no eyewitnesses to show that [Appellant] did that but it sure sounds like someone is trying to stage a scene, a scene of a grieving wife, pining after her estranged husband, alone, wearing her wedding ring, wrapped in his jacket, taking a whole slew of pills. Members, a scene like that would most likely go to show that [Appellant] wasn't involved in that event. It would actually be pretty good for him if she was found like that. But again, there is no evidence to show that he did that.

With respect to the wrongful use of Adderall charge, trial counsel asked the panel a series of seven rhetorical questions. Among these, he asked why Appellant would want to "endanger the welfare of his wife who needed that drug to treat her depression?" and "why did he find the need to share that with another airman . . . ?" He also queried why Appellant did not get his own prescription, why he snorted rather than swallowed the pills, and why he risked his military career.

5

Trial counsel also pressed the veracity of Appellant's unsworn statement. In the unsworn statement, Appellant asserted that many of his supervisors enjoyed working with him. Trial counsel responded to the unsworn statement by rhetorically asking the members, "Does anyone here actually buy that." He then reminded the panel of Appellant's letters of counseling, letters of reprimand, and Article 15s. See 10 U.S.C. § 815 (2006).

With regard to possible punishments, trial counsel argued that Appellant "should be punished by having neither the privilege of wearing [the Air Force] uniform nor an honorable service record."

Trial defense counsel did not object to any of these arguments at trial, nor did the military judge take any action sua sponte. In his sentencing arguments, trial defense counsel presented Appellant as a troubled young man who did not know how to react and made an admittedly bad decision when his wife attempted to overdose. He implored the panel to consider Appellant's rehabilitative potential and to render a sentence that would ensure that Appellant still had hope for his future.

C.

Appellant raised the same issues concerning trial counsel's sentencing arguments before the CCA that he raises now. As Appellant did not object to the sentencing arguments at trial,

6

the CCA reviewed for plain error and found that trial counsel's sentencing arguments were not improper, and thus no prosecutorial misconduct, error by the military judge, or ineffective assistance occurred.

## III.

During sentencing argument, "the trial counsel is at liberty to strike hard, but not foul, blows." United States v. Baer, 53 M.J. 235, 237 (C.A.A.F. 2000). As a zealous advocate for the government, trial counsel may "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." Id.

Because Appellant did not object to trial counsel's sentencing arguments at trial, this Court reviews the propriety of the arguments for plain error. United States v. Marsh, 70 M.J. 101, 104 (C.A.A.F. 2011). To prevail under a plain error analysis, Appellant has the burden of showing, inter alia, that the alleged errors materially prejudiced a substantial right. See id. (citing United States v. Erickson, 65 M.J. 221, 223 (C.A.A.F. 2007)).

In this case, our judgment does not depend on whether any of trial counsel's sentencing arguments were, in fact, improper. Rather, we conclude that Appellant has not met his burden of establishing the prejudice prong of plain error analysis. "In assessing prejudice under the plain error test where

prosecutorial misconduct has been alleged: '[W]e look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial.'" Erickson, 65 M.J. at 224 (quoting United States v. Fletcher, 62 M.J. 175, 184 (C.A.A.F. 2005)). In Fletcher, where the issue was the government's findings argument, we explained that the "best approach" to the prejudice determination involves balancing three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." 62 M.J. at 184. In applying the Fletcher factors in the context of an allegedly improper sentencing argument, we consider whether "'trial counsel's comments, taken as a whole, were so damaging that we cannot be confident' that [the appellant] was sentenced 'on the basis of the evidence alone.'" Erickson, 65 M.J. at 224 (quoting Fletcher, 62 M.J. at 184). In this case, considering the cumulative impact of any allegedly improper arguments in the context of the trial as a whole, we find that the third Fletcher factor weighs so heavily in favor of the Government that we are confident that Appellant was sentenced on the basis of the evidence alone.

With respect to the third Fletcher factor, the weight of the evidence amply supports the sentence imposed by the panel. Appellant failed to establish that the Government's sentencing

argument prejudiced his substantial rights -- that he was not sentenced based on the evidence alone. Appellant's misconduct could have exposed him to seven years and six months of confinement. Trial defense counsel successfully negotiated a pretrial agreement which limited Appellant's confinement exposure to the twelve-month maximum of a special court-martial. Appellant's actual sentence was ten months of confinement, a bad-conduct discharge, and a reprimand. The uncontroverted evidence against Appellant, as admitted in his stipulation of fact, reveals that Appellant watched his wife attempt to commit suicide, took her to her home, left her there alone, and made no attempt to seek medical help. Moreover, Appellant admitted that on the day his wife was admitted to the hospital for this suicide attempt, he committed adultery with another airman. Despite a no-contact order, Appellant continued to commit adultery with the airman. He further admitted to stealing and snorting his wife's Adderall prescription on multiple occasions. The only mitigating evidence consisted of unremarkable character letters from Appellant's mother, grandmother, and a family friend, and sentencing testimony by his mother. Even if each statement Appellant takes issue with was obvious error, Appellant failed to establish that the weight of the evidence did not clearly support the adjudged and approved sentence.

Therefore, Appellant failed to meet his burden of establishing plain error.

As Appellant was not prejudiced by the sentencing arguments, he cannot have been prejudiced by the military judge's failure to interrupt the arguments or issue a curative instruction, or the failure of his trial defense counsel to object to the arguments.  See Strickland v. Washington, 466 U.S. 668, 687 (1984) (requiring that a defendant claiming ineffective assistance of counsel show that he was prejudiced by counsel's deficient performance).

IV.

The judgment of the United States Air Force Court of Criminal Appeals is affirmed.

<u>United States v. Halpin</u>, No. 12-0418/AF

ERDMANN, Judge, with whom EFFRON, Senior Judge, joins (dissenting):

As I would find that trial counsel's improper argument constituted plain error that was prejudicial to Halpin's substantial rights, I respectfully dissent from the majority opinion.

<u>Background</u>

At a special court-marital with members, Halpin entered guilty pleas to all of the offenses with which he was charged. For purposes of this appeal, Halpin admitted guilt to reckless endangerment in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2006). During sentencing arguments, trial counsel initially urged the members to sentence Halpin to the special court-martial maximum of twelve months confinement but later argued for at least ten months confinement and a bad-conduct discharge. Defense counsel argued for a period of confinement of between forty-five days and two months. The members sentenced Halpin to a reprimand, ten months confinement, and a bad-conduct discharge.

<u>Discussion</u>

During arguments on sentencing, trial counsel suggested that Halpin wanted his wife to die, however this assertion was not supported by evidence on the record. "Trial prosecutorial misconduct is behavior by the prosecuting attorney that

'oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" United States v. Fletcher, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting Berger v. United States, 295 U.S. 78, 84 (1935)). "[T]he [Rules for Courts-Martial] and our case law provide that it is error for trial counsel to make arguments that 'unduly inflame the passions or prejudices of the court members'." United States v. Schroder, 65 M.J. 49, 58 (C.A.A.F. 2007) (quoting United States v. Clifton, 15 M.J. 26, 30 (C.M.A. 1983); Rule for Courts-Martial (R.C.M.) 919(b) Discussion). "An accused is supposed to be tried and sentenced as an individual on the basis of the offense(s) charged and the legally and logically relevant evidence presented. Thus, trial counsel is prohibited from injecting into argument irrelevant matters, such as personal opinions and facts not in evidence." Id. (citing Fletcher, 62 M.J. at 180; R.C.M. 919(b) Discussion). "Counsel should limit their arguments to 'the evidence of the record, as well as all reasonable inferences fairly derived from such evidence.'" United States v. Burton, 67 M.J. 150, 152 (C.A.A.F. 2009) (quoting United States v. Baer, 53 M.J. 235, 237 (C.A.A.F. 2000)).

"When no objection is made during the trial, a counsel's arguments are reviewed for plain error." Id. (citing Schroder,

2

65 M.J. at 57-58). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (2) the error results in material prejudice . . . ." Fletcher, 62 M.J. at 179.

a. Error

During his argument on sentencing, trial counsel recounted CH's testimony that she awoke the day after her suicide attempt wearing Halpin's jacket, her wedding ring and a promise ring she had not worn for about a week, as well as her testimony that she found prescription drug bottles from all over her house arranged in a line on her dresser.[1] Trial counsel set the following scene for the members:

> When Airman Halpin finally decides to leave that night, [CH] emerges from the bedroom one last time. She begs him not to go and then she collapses on the couch. Airman Halpin's response is to pick her up, carry her back into the bedroom, lay her in the bed and put his Air Force jacket on her. That last point is interesting. He put his Air Force jacket on her. You heard from [CH] that she had kept her ring in her purse but somehow that ring got placed on her fingers as well. And then there were those pill bottles. The pills that she had, prescription medication, everything else in the house that she had kept in medicine cabinets, that she had kept in kitchen cabinets, all of those pills somehow ended up lined up in a neat little pile on the dresser. Think about that for a second.

---

[1] On cross-examination CH conceded that she did not remember receiving a phone call that night or sending text messages and that it was possible that she put on her rings and lined up the pill bottles but just did not remember doing so.

Now, there are no eyewitnesses to show that Airman Halpin did that, but it sure sounds like someone is trying to stage a scene, a scene of a grieving wife, pining after her estranged husband, alone, wearing her wedding ring, wrapped in his jacket, taking a whole slew of pills. Members, a scene like that would most likely go to show that he wasn't involved in that event. It would actually be pretty good for him if she was found like that. But again, there is no evidence to show he did that.

. . . Of course, only Airman Halpin himself knows why he acted in such a callous and wanton manner that night. And only he knows whether or not he was actually hoping or wanted [CH] to die but one could certainly argue that this would have worked out pretty well for him if she had passed away. The arguments would stop. The impending divorce, expense and effort of it would be saved. Potentially, he could collect on her SGLI payout.

The question before this court is whether there is evidence in the record which supports this argument and if so, whether the argument is a reasonable inference fairly derived from that evidence. See Burton, 67 M.J. at 152.

During the plea inquiry, Halpin admitted all of the elements of reckless endangerment to the court's satisfaction. The offense of reckless endangerment differs from the offense of attempted murder under Articles 80 and 118(2), UCMJ, in that attempted murder requires an intent to kill, while reckless endangerment requires no such intent.[2] Trial counsel's argument,

---

[2] The elements of murder under Article 118(2), UCMJ, are: (a) That a certain named or described person is dead; (b) That the

4

however, strongly implied that Halpin had just such an intent that his wife die ("And only he knows whether or not he was actually hoping or wanted [CH] to die but one could certainly argue that this would have worked out pretty well for him if she had passed away."). In support of this theme, trial counsel went on to argue that Halpin staged the scene at CH's apartment so that he could hide his involvement[3] ("[I]t sure sounds like someone is trying to stage a scene, a scene of a grieving wife, pining after her estranged husband, alone, wearing her wedding ring, wrapped in his jacket, taking a whole slew of pills. Members, a scene like that would most likely go to show that he wasn't involved in that event."). To further support his argument that Halpin intended that his wife die, trial counsel even provided Halpin with several motives ("The arguments would stop. The impending divorce, expense and effort of it would be saved. Potentially, he could collect on her SGLI payout.").

---

death resulted from the act or omission of the accused; (c) That the killing was unlawful; and (d) That, at the time of the killing, the accused had the intent to kill or inflict great bodily harm upon a person. Manual for Courts-Martial, United States pt. IV, para. 43.b.(2) (2012 ed.). Trial counsel's arguments implied that Halpin intended for his wife to die as the result of his actions.

[3] Beyond the total lack of evidence supporting trial counsel's argument that Halpin was attempting to hide his involvement in the events at CH's apartment, the implausibility of this argument is illustrated by the uncontested evidence that when Halpin returned to his apartment he called two friends and his mother and informed them of those events.

There is simply no evidence in the record supporting trial counsel's suggestion that Halpin wanted his wife to die; there is no evidence in the record that he staged the scene in her bedroom in an attempt to hide his involvement in the situation; and there is no evidence in the record that his actions grew out of a desire to avoid divorce proceedings or to collect on CH's life insurance. In fact there is no evidence that CH had life insurance or that Halpin was the beneficiary.

Although I do not question for a moment that Halpin's actions that night were heinous and fully justified the charge of reckless endangerment, he deserved to be sentenced based on the offense he was found guilty of rather than the much more serious offense trial counsel improperly argued before the members. Clifton, 15 M.J. at 30. As there is no evidence in the record to support trial counsel's arguments, there can be no reasonable inference that Halpin tried to stage a scene to hide his involvement or that he intended for his to wife die so that he would benefit personally and financially. Trial counsel's argument was improper and constituted error.

### b. Plain or Obvious

Throughout the Government's sentencing argument, trial counsel actually stated that there was no evidence to support the suggestion that Halpin wanted CH to die. Trial counsel peppered his sentencing argument with the following comments:

"[n]ow, there are no eyewitnesses to show that Airman Halpin did that," and "again, there is no evidence to show he did that," and "only he knows whether or not he was actually hoping or wanted [CH] to die." It is indicative of the plain and obvious nature of the error in this case that trial counsel repeatedly told the members that there was no evidence to support his arguments. See United States v. Carter, 236 F.3d 777, 785 (6th Cir. 2001) (finding prosecutor's misstatement of the evidence "was not only error but also was plain error," and quoting Davis v. Zant, 36 F.3d 1538, 1548 n.15 (11th Cir. 1994), for the proposition that "'[i]t is a fundamental tenet of the law that attorneys may not make material misstatements of fact in summation'").

As this is an Air Force case, the military judge was on notice of United States v. Martinez, 30 M.J. 1194, 1197 n.* (A.F.C.M.R. 1990), which stated:

> we know of no civilian authority for the proposition that a defendant can be found guilty of one crime yet punished for a second crime, or upon a different theory of criminality. Even if such practice might be permitted in civilian courts, we could not sanction it in a court-martial.

Just as in that case, once the military judge entered findings as to one theory of guilt in Halpin's case, the prosecution was precluded from advancing a more serious theory during sentencing. Id. Trial counsel's improper argument constituted plain and obvious error.

c. <u>Prejudice</u>

The next question is whether the plain and obvious error materially prejudiced a substantial right of the accused. <u>See</u> <u>Fletcher</u>, 62 M.J. at 184. In order to evaluate prejudice, the court looks at the cumulative impact of the improper argument on the accused's substantial rights and the fairness and integrity of his trial. <u>Id.</u> This requires a balancing of three factors "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." <u>Id.</u> The court reviews these factors to determine whether trial counsel's comments, "'taken as a whole, were so damning that we cannot be confident' that [Halpin] was sentenced 'on the basis of evidence alone.'" <u>Erickson</u>, 65 M.J. at 224 (quoting <u>Fletcher</u>, 62 M.J. at 184).

The majority holds that the third <u>Fletcher</u> factor "weighs so heavily in favor of the Government" that discussion of the first two <u>Fletcher</u> factors is unnecessary. <u>Halpin</u>, __ M.J. at __ (8). However, the severity of the misconduct in this case and the fact that there were no measures to cure the misconduct cannot be ignored by this court and all three factors must be balanced.

In this guilty plea court-martial, trial counsel's sentencing argument constituted the entire narrative of the Government's case. Almost all of the argument on the reckless

8

endangerment charge relied on facts not in evidence and significantly exaggerated the severity of Halpin's actions. The impropriety of arguing for a sentence based on a crime for which Halpin was neither charged nor convicted is obvious. The potential impact of trial counsel's improper argument was severe.

There were no curative measures taken to overcome trial counsel's improper argument. As in Fletcher, "[c]orrective instructions at an early point might have dispelled the taint of the initial remarks." 62 M.J. at 185. Instead, the military judge allowed the improper comments without providing a curative instruction to the members.

Finally, with respect to the last Fletcher factor, the weight of evidence established that Halpin was guilty of the offense of reckless endangerment. It did not establish that he was guilty of attempted murder as the trial counsel implied in his sentencing argument.

The majority's assertion that Halpin's conduct exposed him to "seven years and six months confinement" but that his trial defense counsel negotiated a pretrial agreement which limited Appellant's confinement exposure to the twelve-month maximum of a special court-martial misses the point. Halpin, __ M.J. at __ (9). In this case the Government referred Halpin to a special court-martial and it appears that in return Halpin agreed to

9

plead guilty to the offenses with which he was charged.  The special court-martial referral and the pretrial agreement defined the sentencing universe and it should not now be the basis for a finding that Halpin was not prejudiced.[4]  The prejudice inquiry should instead focus on the effect the improper argument had on the sentence Halpin received within that sentencing universe.  The members sentenced Halpin to the same term of confinement and discharge that trial counsel suggested at the close of his sentencing arguments.  Although we cannot know what impact trial counsel's improper argument had on the members, his argument was persuasive to the extent that the members handed down the exact sentence which trial counsel requested.

In view of the improper argument, I cannot be confident that Halpin was sentenced on the basis of evidence alone.  I would therefore find that Halpin was prejudiced by the improper argument made by trial counsel.  I would reverse the decision of the CCA, set aside the sentence and remand the case for a new sentencing hearing.

---

[4] The pretrial agreement in this case provided that the sentence was limited by the special court-martial maximum.