ERDMANN, Judge,
with whom EFFRON, Senior Judge,
joins (dissenting):
As I would find that trial counsel’s improper argument constituted plain error that was prejudicial to Halpin’s substantial rights, I respectfully dissent from the majority opinion.

Background

At a special court-marital with members, Halpin entered guilty pleas to all of the offenses with which he was charged. For purposes of this appeal, Halpin admitted guilt to reckless endangerment in violation of *481 Article 134, UCMJ, 10 U.S.C. § 934 (2006). During sentencing arguments, trial counsel initially urged the members to sentence Hal-pin to the special court-martial maximum of twelve months confinement but later argued for at least ten months confinement and a bad-conduct discharge. Defense counsel argued for a period of confinement of between forty-five days and two months. The members sentenced Halpin to a reprimand, ten months confinement, and a bad-conduct discharge.

Discussion

During arguments on sentencing, trial counsel suggested that Halpin wanted his wife to die, however this assertion was not supported by evidence on the record. “Trial prosecutorial misconduct is behavior by the prosecuting attorney that ‘oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.’ ” United States v. Fletcher, 62 M.J. 176, 178 (C.A.A.F.2005) (quoting Berger v. United States, 295 U.S. 78, 84, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). “[T]he [Rules for Courts-Martial] and our case law provide that it is error for trial counsel to make arguments that ‘unduly inflame the passions or prejudices of the court members’.” United States v. Schroder, 65 M.J. 49, 58 (C.A.A.F.2007) (quoting United States v. Clifton, 15 M.J. 26, 30 (C.M.A.1983); Rule for Courts-Martial (R.C.M.) 919(b) Discussion). “An accused is supposed to be tried and sentenced as an individual on the basis of the offense(s) charged and the legally and logically relevant evidence presented. Thus, trial counsel is prohibited from injecting into argument irrelevant matters, such as personal opinions and facts not in evidence.” Id. (citing Fletcher, 62 M.J. at 180; R.C.M. 919(b) Discussion). “Counsel should limit their arguments to ‘the evidence of the record, as well as all reasonable inferences fairly derived from such evidence.’ ” United States v. Burton, 67 M.J. 150, 152 (C.A.A.F.2009) (quoting United States v. Baer, 53 M.J. 235, 237 (C.A.A.F.2000)).
“When no objection is made during the trial, a counsel’s arguments are reviewed for plain error.” Id. (citing Schroder, 65 M.J. at 57-58). “Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (2) the error results in material prejudice ....” Fletcher, 62 M.J. at 179.
a. Error
During his argument on sentencing, trial counsel recounted CH’s testimony that she awoke the day after her suicide attempt wearing Halpin’s jacket, her wedding ring and a promise ring she had not worn for about a week, as well as her testimony that she found prescription drug bottles from all over her house arranged in a line on her dresser.[1] Trial counsel set the following scene for the members:
When Airman Halpin finally decides to leave that night, [CH] emerges from the bedroom one last time. She begs him not to go and then she collapses on the couch. Airman Halpin’s response is to pick her up, carry her back into the bedroom, lay her in the bed and put his Air Force jacket on her. That last point is interesting. He put his Air Force jacket on her. You heard from [CH] that she had kept her ring in her purse but somehow that ring got placed on her fingers as well. And then there were those pill bottles. The pills that she had, prescription medication, everything else in the house that she had kept in medicine cabinets, that she had kept in kitchen cabinets, all of those pills somehow ended up lined up in a neat little pile on the dresser. Think about that for a second.
Now, there are no eyewitnesses to show that Airman Halpin did that, but it sure sounds like someone is trying to stage a scene, a scene of a grieving wife, pining after her estranged husband, alone, wearing her wedding ring, wrapped in his jacket, taking a whole slew of pills. Members, a scene like that would most likely go to *482 show that he wasn’t involved in that event. It would actually be pretty good for him if she was found like that. But again, there is no evidence to show he did that.
... Of course, only Airman Halpin himself knows why he acted in such a callous and wanton manner that night. And only he knows whether or not he was actually hoping or wanted [CH] to die but one could certainly argue that this would have worked out pretty well for him if she had passed away. The arguments would stop. The impending divorce, expense and effort of it would be saved. Potentially, he could collect on her SGLI payout.
The question before this court is whether there is evidence in the record which supports this argument and if so, whether the argument is a reasonable inference fairly derived from that evidence. See Burton, 67 M.J. at 152.
During the plea inquiry, Halpin admitted all of the elements of reckless endangerment to the court’s satisfaction. The offense of reckless endangerment differs from the offense of attempted murder under Articles 80 and 118(2), UCMJ, in that attempted murder requires an intent to kill, while reckless endangerment requires no such intent.[2] Trial counsel’s argument, however, strongly implied that Halpin had just such an intent that his wife die (“And only he knows whether or not he was actually hoping or wanted [CH] to die but one could certainly argue that this would have worked out pretty well for him if she had passed away.”]. In support of this theme, trial counsel went on to argue that Halpin staged the scene at CH’s apartment so that he could hide his involvement[3] (“[I]t sure sounds like someone is trying to stage a scene, a scene of a grieving wife, pining after her estranged husband, alone, wearing her wedding ring, wrapped in his jacket, taking a whole slew of pills. Members, a scene like that would most likely go to show that he wasn’t involved in that event.’]. To further support his argument that Halpin intended that his wife die, trial counsel even provided Halpin with several motives (“The arguments would stop. The impending divorce, expense and effort of it would be saved. Potentially, he could collect on her SGLI payout.”).
There is simply no evidence in the record supporting trial counsel’s suggestion that Halpin wanted his wife to die; there is no evidence in the record that he staged the scene in her bedroom in an attempt to hide his involvement in the situation; and there is no evidence in the record that his actions grew out of a desire to avoid divorce proceedings or to collect on CH’s life insurance. In fact there is no evidence that CH had life insurance or that Halpin was the beneficiary.
Although I do not question for a moment that Halpin’s actions that night were heinous and fully justified the charge of reckless endangerment, he deserved to be sentenced based on the offense he was found guilty of rather than the much more serious offense trial counsel improperly argued before the members. Clifton, 15 M.J. at 30. As there is no evidence in the record to support trial counsel’s arguments, there can be no reasonable inference that Halpin tried to stage a scene to hide his involvement or that he intended for his to wife die so that he would benefit personally and financially. Trial counsel’s argument was improper and constituted error.
b. Plain or Obvious
Throughout the Government’s sentencing argument, trial counsel actually stated that there was no evidence to support the sugges *483 tion that Halpin wanted CH to die. Trial counsel peppered his sentencing argument with the following comments: “[n]ow, there are no eyewitnesses to show that Airman Halpin did that,” and “again, there is no evidence to show he did that,” and “only he knows whether or not he was actually hoping or wanted [CH] to die.” It is indicative of the plain and obvious nature of the error in this case that trial counsel repeatedly told the members that there was no evidence to support his arguments. See United States v. Carter, 236 F.3d 777, 785 (6th Cir.2001) (finding prosecutor’s misstatement of the evidence “was not only error but also was plain error,” and quoting Davis v. Zant, 36 F.3d 1538, 1548 n. 15 (11th Cir.1994), for the proposition that “ ‘[i]t is a fundamental tenet of the law that attorneys may not make material misstatements of fact in summation’ ”).
As this is an Air Force case, the military judge was on notice of United States v. Martinez, 30 M.J. 1194, 1197 n. * (A.F.C.M.R. 1990), which stated:
we know of no civilian authority for the proposition that a defendant can be found guilty of one crime yet punished for a second crime, or upon a different theory of criminality. Even if such practice might be permitted in civilian courts, we could not sanction it in a court-martial.
Just as in that case, once the military judge entered findings as to one theory of guilt in Halpin’s case, the prosecution was precluded from advancing a more serious theory during sentencing. Id. Trial counsel’s improper argument constituted plain and obvious error.
e. Prejudice
The next question is whether the plain and obvious error materially prejudiced a substantial right of the accused. See Fletcher, 62 M.J. at 184. In order to evaluate prejudice, the court looks at the cumulative impact of the improper argument on the accused’s substantial rights and the fairness and integrity of his trial. Id. This requires a balancing of three factors “(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.” Id. The court reviews these factors to determine whether trial counsel’s comments, “ ‘taken as a whole, were so damning that we cannot be confident’ that [Halpin] was sentenced ‘on the basis of evidence alone.’” Erickson, 65 M.J. at 224 (quoting Fletcher, 62 M.J. at 184).
The majority holds that the third Fletcher factor “weighs so heavily in favor of the Government” that discussion of the first two Fletcher factors is unnecessary. Halpin, 71 M.J. at 480. However, the severity of the misconduct in this case and the fact that there were no measures to cure the misconduct cannot be ignored by this court and all three factors must be balanced.
In this guilty plea court-martial, trial counsel’s sentencing argument constituted the entire narrative of the Government’s case. Almost all of the argument on the reckless endangerment charge relied on facts not in evidence and significantly exaggerated the severity of Halpin’s actions. The impropriety of arguing for a sentence based on a crime for which Halpin was neither charged nor convicted is obvious. The potential impact of trial counsel’s improper argument was severe.
There were no curative measures taken to overcome trial counsel’s improper argument. As in Fletcher, “[corrective instructions at an early point might have dispelled the taint of the initial remarks.” 62 M.J. at 185. Instead, the military judge allowed the improper comments without providing a curative instruction to the members.
Finally, with respect to the last Fletcher factor, the weight of evidence established that Halpin was guilty of the offense of reckless endangerment. It did not establish that he was guilty of attempted murder as the trial counsel implied in his sentencing argument.
The majority’s assertion that Halpin’s conduct exposed him to “seven years and six months confinement” but that his trial defense counsel negotiated a pretrial agreement which limited Appellant’s confinement exposure to the twelve-month maximum of a special court-martial misses the point. Hal-pin, 71 M.J. at 480. In this ease the Govern *484 ment referred Halpin to a special court-martial and it appears that in return Halpin agreed to plead guilty to the offenses with which he was charged. The special court-martial referral and the pretrial agreement defined the sentencing universe and it should not now be the basis for a finding that Halpin was not prejudiced.[4] The prejudice inquiry should instead focus on the effect the improper argument had on the sentence Halpin received within that sentencing universe. The members sentenced Halpin to the same term of confinement and discharge that trial counsel suggested at the close of his sentencing arguments. Although we cannot know what impact trial counsel’s improper argument had on the members, his argument was persuasive to the extent that the members handed down the exact sentence which trial counsel requested.
In view of the improper argument, I cannot be confident that Halpin was sentenced on the basis of evidence alone. I would therefore find that Halpin was prejudiced by the improper argument made by trial counsel. I would reverse the decision of the CCA, set aside the sentence and remand the case for a new sentencing hearing.

. On cross-examination CH conceded that she did not remember receiving a phone call that night or sending text messages and that it was possible that she put on her rings and lined up the pill bottles but just did not remember doing so.

. The elements of murder under Article 118(2), UCMJ, are: (a) That a certain named or described person is dead; (b) That the death resulted from the act or omission of the accused; (c) That the killing was unlawful; and (d) That, at the time of the killing, the accused had the intent to kill or inflict great bodily harm upon a person. Manual for Courts-Martial, United States pt. IV, para. 43.b.(2) (2012 ed.). Trial counsel’s arguments implied that Halpin intended for his wife to die as the result of his actions.

. Beyond the total lack of evidence supporting trial counsel’s argument that Halpin was attempting to hide his involvement in the events at CH's apartment, the implausibility of this argument is illustrated by the uncontested evidence that when Halpin returned to his apartment he called two friends and his mother and informed them of those events.

. The pretrial agreement in this case provided that the sentence was limited by the special court-martial maximum.