# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Airman First Class JUSTIN M. DAVIS
### United States Air Force

### ACM 38518

### 21 July 2015

Sentence adjudged 15 March 2013 by GCM convened at Dyess Air Force Base, Texas. Military Judge: William C. Muldoon, Jr.

Approved Sentence: Dishonorable discharge, confinement for 8 months, forfeiture of $1,516.00 pay per month for 8 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Johnathan D. Legg.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of sexual assault and abusive sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] The court sentenced him to a dishonorable discharge, confinement for 8 months, forfeiture of $1,516.20 pay per

---

[1] The appellant was acquitted of a second specification of sexual assault involving the same victim. He was also acquitted of wrongful sexual contact with another Airman and two specifications of assault consummated by a battery involving other Airmen.

month for 8 months, and reduction to E-1. The convening authority reduced the forfeitures to $1,516.00 pay per month for 8 months and approved the remaining sentence as adjudged.

On appeal, the appellant contends (1) the military judge erred by refusing to allow the defense to submit certain evidence, (2) the findings of guilt for both specifications are facially duplicative, (3) trial counsel made an improper findings argument, and (4) the evidence is insufficient to support the findings of guilt. Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.[2]

*Facts*

The appellant's convictions in this case stemmed from his interaction with a male friend, Airman First Class (A1C) TH, in the early morning hours of 30 June 2012. The two became roommates at an off-base townhouse earlier in 2012 and considered each other to be best friends.

On the night of 29 June 2012, A1C TH went out with two friends to celebrate his 21st birthday after a full day at work. A1C TH drank several alcoholic drinks alone prior to going out and several more at the tavern. The appellant declined A1C TH's invitation to join them. When the group arrived back at the townhouse that A1C TH shared with the appellant, the appellant and two other Airmen were already there. What happened next served as the basis for several of the charges brought against the appellant.

Ultimately, the appellant was convicted of sexually assaulting A1C TH by engaging in oral sodomy upon A1C TH and of abusive sexual contact by touching A1C TH's genitalia with his hands, both of which occurred while A1C TH was incapable of consenting due to alcohol impairment which was known or reasonably should have been known by the appellant.[3]

A1C TH testified at trial about his memory of the events that occurred after he returned home. He did not remember all the events at the tavern, nor did he recall coming home. His next memory was a vague recollection of seeing someone playing beer pong. Each of these friends testified at trial regarding A1C TH's behavior and level of intoxication, and one videotaped A1C TH leaning heavily on another Airman.

A1C TH's designated driver for that evening testified about the large amount of alcohol A1C TH consumed at the tavern. She described A1C TH as very intoxicated, talkative, and excited when they left. She had to help him out of the vehicle and into his

---

[2] The expurgated copy of the Court-Martial Order (CMO) lists the names of the victims of the specifications of which the appellant was acquitted. We order a corrected CMO substituting initials for the names of the victims. *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.7 (6 June 2013).
[3] The appellant was acquitted of sexually assaulting A1C TH by penetrating his anus during this incident.

townhouse by putting her arm around his waist while he leaned on her. She saw the appellant and another man playing beer pong. A1C TH stumbled, and the appellant helped him onto the couch. The appellant did not appear intoxicated, and A1C TH was awake and talking, though he was intoxicated. At this point, the two friends who had gone out drinking with A1C TH that evening left him at his townhouse and returned to their own home.

The Airmen who were at the townhouse described A1C TH as stumbling and slurring his words after he returned home. One saw A1C TH drink beer, throw up in his cup, and then drink out of the cup again. He also knocked over the beer pong table. When A1C TH got belligerent with the other guests, the appellant told him to go to bed. The two fell down the stairs when the appellant tried to help A1C TH go to his room. Another Airman came upstairs to assist and found the appellant putting A1C TH into bed with his clothes on. A1C TH said in Spanish, "I want to do it," in a slurred voice. They left A1C TH upstairs and continued drinking for several more hours. The other guests then left the appellant and A1C TH alone in their townhouse. The guests testified that that appellant was drinking but did not appear as intoxicated as A1C TH.

A1C TH's next memory after beer pong was awakening to find someone trying to pull down his boxer briefs and a hand touching his penis and fondling his testicles. He did not know where he was, but it was dark. A1C TH testified that things went black again, but he could feel that his shirt was wet and smelled like vomit and alcohol. He felt someone in front of him engaging in oral sodomy upon him while fondling his testicles and anus and grabbing his buttocks. A1C TH testified that he then blacked out again. He heard the person tell him to "Shhh." He next awoke to find himself on the floor of his bedroom and felt the presence of someone behind him. He testified that he tried to yell, but the sound came out like a moan, and he was again told to "Shhh." The next time he awoke, it was morning, and he was alone. He got into bed and went to sleep. When he awoke the next time, he realized what had happened to him and called a friend for help. The friend testified that A1C TH appeared very tired and still drunk. The two went to a local hospital where a sexual assault examination was done. A1C TH vomited prior to leaving the townhouse and at the hospital. By this time, A1C TH had realized it was the appellant who had interacted with him and was crying. The appellant could not be ruled out as the source of DNA found on A1C TH's penis.

The defense theory of the case was that the sexual contact between the appellant and A1C TH was consensual and occurred while both were intoxicated, but while A1C TH was competent to consent to that activity. The appellant testified to that effect. He described coming upstairs to ask A1C TH to reset the computer router in his room, and the two ended up lying in bed together while A1C TH said, "I want to do it," in Spanish. The appellant returned downstairs to the beer pong game. When he went upstairs later, he saw A1C TH lying on the ground next to his bed and went in to talk to him. He could tell A1C TH was drunk. They talked for a few minutes and he then

claims A1C TH initiated physical contact with him. The appellant said he stroked A1C TH's penis and tugged his underwear down while A1C TH moved his body to accommodate it. The appellant claimed he initiated oral sex and continued until A1C TH used his hands to push the appellant's head down. He denied touching A1C TH's anus or buttocks. He also said he did not smell or see any vomit in A1C TH's room. Although A1C TH did not say anything during this incident, the appellant did not believe he was incoherent or incapable of consenting to the conduct. He testified that, based on what he knew by the time of trial, he no longer believed A1C TH was able to consent and that he should have known it. He also admitted his own alcohol use was not an excuse.

The panel convicted the appellant of engaging in oral sodomy with A1C TH while he was incapable of consenting due to his alcohol impairment, a fact the appellant either knew or should have known. Consistent with the appellant's testimony, the panel also convicted him of touching A1C TH's genitals but acquitted him of touching his buttocks and touching and penetrating his anus.

*Evidence of Sexual Predisposition*

During the appellant's testimony, the defense attempted to elicit certain evidence that, prior to the charged offenses, A1C TH had engaged in certain conduct supporting the appellant's claim of consent or mistake of fact as to consent.[4] The military judge authorized the appellant to testify that he and A1C TH had slept in the same bed on one occasion while visiting the appellant's parents. He refused to allow defense counsel to ask any further questions about that incident or about the appellant's perception about A1C TH's sexuality based on this incident. The appellant contends this limitation on his testimony constituted an abuse of discretion.

Prior to this ruling, the appellant had already testified about why he had always believed A1C TH was gay based on his social interests and certain aspects of his personality.[5] Trial counsel stated he had not objected to this prior testimony as he thought this sexual predisposition evidence was likely admissible under the exceptions found in Mil. R. Evid. 412. He now asked for a proffer of what evidence the defense intended to elicit about this sleeping incident.

---

[4] The court recognizes that the appellant's honest and reasonable mistake as to consent is not a defense in these circumstances because the specification alleges sexual assault by reason of impairment, not bodily harm. That is, even if the facts were as the appellant believed (i.e., the victim consented), his behavior would still have been unlawful as long as the victim was impaired by alcohol and the appellant knew or should have known of the impairment. However, since the appellant asserts the military judge's Mil. R. Evid. 412 ruling was erroneous, we address that assertion before considering the viability of such a defense in determining whether any error was prejudicial.

[5] In his testimony, A1C TH stated he was a heterosexual and denied engaging in any consensual physical encounter with the appellant. He also testified that he had no idea the appellant was gay.

Defense counsel indicated his intent was to only elicit testimony that the two had once slept together in the same bed and to argue this was one more factor that caused the appellant to perceive that A1C TH was gay. The military judge agreed this would be admissible under Mil. R. Evid. 412. When asked whether he intended to elicit any additional sexual predisposition evidence, defense counsel said the defense was not attempting to prove A1C TH was gay. Because the defense was simply trying to demonstrate why the appellant perceived A1C TH was gay in order to bolster his mistake of fact defense, defense counsel believed the prohibition of Mil. R. Evid. 412(a)(2) was inapplicable.

The military judge disagreed, finding this type of evidence would fall under Mil. R. Evid. 412(a)(2). After the military judge asked for a proffer of what further evidence the defense intended to introduce, defense counsel again stated he only intended to elicit that the two slept together in the same bed and he then engaged in a proposed direct examination of the appellant where he asked only that question. After cross-examining the appellant about the event, trial counsel conceded the defense's proposed evidence would be admissible under the "constitutionally required" exception found in Mil. R. Evid. 412(b)(1)(C), but did not concede that evidence would warrant a mistake of fact instruction.

The military judge found this would be relevant evidence that would go to a mistake of fact defense and ruled the defense could engage in this very limited inquiry. When the defense asked for clarification on whether he could ask the appellant anything further about this event, the military judge said "no, because that's not the direct exam [of the appellant] that you conducted" during the closed Article 39(a), UCMJ, session. Defense counsel indicated he understood.

In front of the members, the appellant testified consistent with the military judge's ruling, stating he and A1C TH slept in the same bed on one night during a trip that occurred prior to the charged incident. He now contends trial defense counsel also should have been permitted to ask the appellant the questions trial counsel had asked about the event during the Article 39(a), UCMJ, session. He further argues that the answers to these questions would have been important to his mistake of fact defense.

Generally, a military judge's ruling on whether to exclude evidence under Mil. R. Evid. 412 is reviewed for abuse of discretion. *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011). Here, however, the defense never moved to admit evidence beyond the mere fact that the appellant and A1C TH shared a bed on one night. Therefore, the military judge did not formally exclude defense-requested evidence. We find that defense counsel's decision not to ask the military judge to reconsider the scope of his ruling forfeits this issue in the absence of plain error. *See United States v. Welch*, 25 M.J. 23, 26 (C.M.A. 1987); *cf. United States v. Elespuru*, 73 M.J. 326, 328 (C.A.A.F. 2014)

(stating that given the presumption against waiver of the fullest expression of constitutional rights, we treat the failure to object as forfeiture and review for plain error).

Here, the military judge's decision to not broaden the scope of permissible evidence regarding the sleeping event did not constitute plain error. To prevail under a plain error analysis, the appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)) (internal quotation marks omitted). If the plain error is of a constitutional dimension, the test for constitutional error is whether the error was harmless beyond a reasonable doubt. *United States v. Powell*, 49 M.J. 460, 465 n.* (C.A.A.F. 1998).

Here, even if the non-admitted evidence was constitutionally required to be admitted under Mil. R. Evid. 412, we find its non-admission was harmless beyond a reasonable doubt. In convicting the appellant, the panel concluded beyond a reasonable doubt that (1) A1C TH was incapable of consenting, and (2) the appellant either knew or should have known that fact. Accordingly, even if the appellant convincingly demonstrated that A1C TH was open to a sexual encounter with him, A1C TH's state of intoxication still would have rendered such conduct unlawful under the circumstances at the time of the assault. The non-admission of this evidence therefore did not constitute plain error.

*Duplicative Specifications*

In Charge I, Specification 2, the appellant was charged with sexual assault "by penetrating the mouth of [the appellant] . . . with the penis of [A1C TH]" to gratify his own sexual desires while A1C TH was incapable of consenting to the sexual act due to A1C TH's alcohol impairment, which was known or reasonably should have been known by the appellant. The abusive sexual contact specification of the Additional Charge used identical language, other than alleging the appellant "touch[ed] directly the genitalia, anus, and buttocks of [A1C TH] with his hands." In convicting the appellant of this latter offense, the panel excepted the words "anus and buttocks."

For the first time, the appellant now argues the latter offense is facially duplicative of the sexual assault charge as touching A1C TH's genitalia was included within the allegation that the appellant engaged in oral sodomy with A1C TH. In the alternative, he argues the findings constitute an unreasonable multiplication of charges that should have been merged for sentencing.

Absent plain error, claims of multiplicity are forfeited in the absence of a motion to dismiss. *United States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F. 2000). To find plain error, we are required to determine that the specifications are facially duplicative, i.e.,

factually the same, a question of law we review de novo. *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004). Specifications are not facially duplicative if each requires proof of a fact not required to prove the others. *United States v. Campbell*, 68 M.J. 217, 220 (C.A.A.F. 2009). The specifications at issue here are clearly not facially duplicative as each requires proof of a fact the other does not.

Rule for Courts-Marital (R.C.M.) 307(c)(4) is the current regulatory expression of that prohibition, directing "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." By not raising this issue at trial, the appellant has forfeited his right to relief on appeal absent plain error. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009); *United States v. Butcher*, 56 M.J. 87, 93 (C.A.A.F. 2001); Article 59(a), UCMJ, 10 U.S.C. §859(a). We find no error here, plain or otherwise. The testimony of both the appellant and A1C TH indicate the touching of A1C TH's genitals did not occur as part of the incident of oral sodomy. Thus, we cannot conclude that the evidence establishes the specifications embrace conduct that occurred in a single transaction.

*Findings Argument*

Although he did not object at trial, the appellant now contends that trial counsel's findings argument was improper because he disparaged trial defense counsel and the appellant, and improperly injected his personal views and beliefs into the proceedings. The failure of trial defense counsel to object to the argument of trial counsel constitutes forfeiture of the issue on appeal in the absence of plain error. R.C.M. 919(c); *see also United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007); *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005). In applying the law to the facts of this case, trial counsel's comments must be examined in context of the entire court-martial. *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005).

The appellant complains trial counsel improperly disparaged the appellant by making multiple references to the appellant lying to his friends and during his testimony. Our superior court has cautioned that "calling the accused a liar is a 'dangerous practice that should be avoided,'" *Fletcher*, 62 M.J. at 182 (quoting *United States v. Clifton*, 15 M.J. 26, 30 n.5 (C.M.A. 1983)), noting that "such conduct is inconsistent with the duty of the prosecutor to 'seek justice, not merely to convict.'" *Id*. (quoting *United States v. White*, 486 F.2d 204, 206 (2d Cir. 1973)).[6] When an accused elects to testify, it is not

---

[6] The appellant also contends trial counsel made several comments during his findings argument that disparaged his trial defense counsel. Similarly, it is improper for a trial counsel to malign trial defense counsel in an attempt to win favor with the panel. *United States v. Fletcher*, 62 M.J. 175, 181 (C.A.A.F. 2005). A trial counsel's disparaging remarks about defense counsel may, in some circumstances, cause a panel to decide a case based on factors other than the evidence. *Id*. The appellant contends several of the comments by trial counsel rise to this level. We disagree. The comments made by trial counsel simply juxtaposed his view of the defense's approach in the case with the military judge's instruction to the panel to use their common sense and knowledge of human nature and the ways of the world as they weigh and evaluate the evidence in the case.

inappropriate for a trial counsel to comment on how that testimony conflicts with other evidence in the case or is otherwise not credible. The impropriety arises when trial counsel's language is "more of a personal attack on the defendant than a commentary on the evidence." *Id.* at 183.

The appellant also contends trial counsel improperly referred to his own personal beliefs about the veracity of witnesses and the strength of certain evidence. A trial counsel should not interject himself into the trial proceedings by expressing his personal belief or opinion about the truth or falsity of testimony or evidence. *Id.* at 180. Improper vouching occurs when trial counsel "places the prestige of the government behind a witness through personal assurances of the witness's veracity." *Id.* (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1994)) (internal quotation marks and alterations omitted). Similarly, the introduction of trial counsel's personal views on the evidence through substantive commentary on the truth or falsity of evidence can be improper overzealous conduct. *Id.*

Trial counsel's argument did, at times, interject his personal beliefs and opinions into the case and appears to vouch for the credibility of some of the government's evidence. Similarly, his references to the appellant's testimony and veracity do stray close to being a personal attack. However, even if trial counsel's comments here crossed the "exceedingly fine line which distinguishes permissible advocacy from improper excess," the comments were not so obviously improper as to merit relief in the absence of an objection from counsel when considered within the context of the trial as a whole. *See id.* at 183. The panel clearly was not swayed by trial counsel's argument as the appellant was acquitted of multiple offenses that were implicated by the challenged portions of trial counsel's findings argument. Lastly, in addition to not objecting, defense counsel raised the possibility of asking for an instruction on certain aspects of trial counsel's argument but then expressly chose not to ask for the instruction. The lack of a defense objection to trial counsel's argument is "some measure of the minimal impact" of the argument. *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)) (internal quotation marks omitted). Trial counsel's comments thus did not rise to the level of plain error.

*Factual and Legal Sufficiency*

The appellant argues that the evidence was legally and factually insufficient to sustain his conviction for sexual assault and abusive sexual contact. We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). "The test for factual sufficiency is whether, after weighing the

evidence . . . and making allowances for not having . . . observed the witnesses, [we ourselves are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *Turner*, 25 M.J. at 325) (internal quotation marks omitted). Applying these standards to the record in this case, we find the evidence legally and factually sufficient to support the findings of guilt.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38518