UNITED STATES, Appellee,

v.

Richard O. VASQUEZ, Senior Airman,
U.S. Air Force, Appellant.

No. 95–0814.
Crim.App. No. 30752.

U.S. Court of Appeals for
the Armed Forces.

Argued April 7, 1998.

Decided Sept. 10, 1998.

For Appellant: *Major Carol L. Hubbard* (argued); *Colonel Douglas H. Kohrt* (on brief); *Lieutenant Colonel Joseph L. Heimann, Lieutenant Colonel Kim L. Sheffield,* and *Captain Todi S. Carnes.*

For Appellee: *Major Karen L. Manos,* USAFR (argued); *Colonel Brenda J. Hollis, Lieutenant Colonel Michael J. Breslin,* and *Captain Mitchel Neurock* (on brief); *Colonel Jeffery T. Infelise.*

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was found guilty of signing a false official statement, bigamy, and adultery, in violation of Articles 107 and 134, Uniform Code of Military Justice, 10 USC §§ 907 and 934, respectively. The convening authority approved the sentence of a bad-conduct discharge, 9 months' confinement, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 42 MJ 544 (1995). Subsequently, this Court set aside that decision. 44 MJ 52 (1996). The Court of Criminal Appeals then ordered further review on a properly authenticated record of trial. The convening authority withdrew the prior action and again approved the sentence. Following this action, the Court of Criminal Appeals affirmed the findings and the sentence again.

We granted review of the following issues:

I. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY REFUSING TO INSTRUCT ON DURESS WITH REGARD TO PERSONS APPELLANT SUBJECTIVELY PERCEIVED, AT THE TIME OF HIS OFFENSES, TO BE "INNOCENT."

II. WHETHER TRIAL COUNSEL'S IMPROPER ARGUMENT THAT APPELLANT BORE THE BURDEN OF PROVING HIS DEFENSE SUBSTAN-

TIALLY PREJUDICED APPELLANT BY IMPERMISSIBLY SHIFTING THE BURDEN OF PROOF TO THE DEFENSE.[*]

We resolve both of these issues against appellant for the reasons stated below.

FACTS

Appellant, a married servicemember, was deployed to Turkey as part of Operation Provide Comfort. Appellant and another servicemember, Eric Little, shared a house with a Turkish man, Adnan Sert. During that time, appellant entered into a sexual relationship with a Turkish woman, Dilek Boy. Eric Little also had a Turkish female friend, Nazli Acar.

On November 11, 1991, a Turkish policeman went to Mr. Sert's house to investigate a report that Mr. Sert was running a house of prostitution. The police transported Mr. Sert, Ms. Boy, and Ms. Acar to the police station. The women told the police that appellant and Eric Little were their fiances.

Appellant testified that, when they returned from the police station, Ms. Boy informed him that he must marry her or they would all go to jail. Ms. Acar and Mr. Sert seemed to agree with this sentiment. Appellant believed Turkish jails were horrible because he had seen a movie in which an American in a Turkish jail was beaten, tortured, and raped while in prison. Appellant also believed prisons for women were operated as houses of prostitution. Appellant testified he was afraid for himself and his friends.

On November 12, 1991, appellant signed an affidavit stating that he was free to marry. On either November 12 or 13, 1991, Eric Little married Ms. Acar. On November 14, 1991, appellant married Ms. Boy. Appellant testified that, about 4 weeks later, at the end of his deployment, he gave Ms. Boy $350 to obtain a divorce.

Ms. Boy testified that she and appellant had planned to marry prior to the police raid. She also testified that appellant told her he would return to Turkey (not that he gave her

---

* We heard oral argument in this case at the United States Air Force Academy as part of "Project Outreach." *See United States v. Stinson,* 34 MJ 233, 234 n. * (CMA 1992).

money for a divorce). She testified that she married appellant because of a mutual love affair, but at the time of trial, she had decided she wanted a divorce. She also denied stating that she and appellant and their friends would go to jail if they did not marry.

At trial, appellant did not deny that he committed the crimes, but he claimed that he did so under duress because he feared for his friends' and his own safety. Appellant explained that, even if he had sought legal assistance, he believed his Turkish friends would "have been left out in the wind."

Based on the evidence, the defense argued that a duress instruction was required. The Government contended that there was no immediate threat of death or serious bodily harm, no well-grounded fear, and that there was a reasonable opportunity to seek assistance. The military judge then asked about appellant's defense of duress based upon the protection of others, namely, Ms. Acar, Mr. Sert, and Ms. Boy. The Government argued that they were not innocent parties as required by the rules. The defense responded that appellant believed the women and Mr. Sert were innocent parties at the time. The defense also argued that, even if appellant had a reasonable opportunity to save himself from Turkish prison, he had no reasonable opportunity to save his friends.

The judge ruled that appellant had raised some evidence of the duress defense with regard to appellant's own safety. However, the judge refused to give a duress instruction that encompassed appellant's concern for his friends.

During closing arguments, the Government argued that appellant had no reasonable apprehension that he would die or suffer serious bodily harm. Throughout its closing argument, the Government continued to maintain that the defense had presented no evidence of duress.

The defense objected, arguing that it did not have to present evidence of duress. The military judge stated, after the first objection, that the accused "doesn't have to show—he doesn't have to present evidence." Then the military judge agreed with trial counsel that the "defense does have to estab-lish evidence to raise this defense." The military judge overruled both defense objections.

During closing arguments, the defense argued the following:

Now, what the Government wants you to do in this case is to make SrA Vasquez prove that he was under duress. As we talked in *voir dire* and as the Judge will instruct you, that is not the way it works. Once the issue has been raised, and the Military Judge has ruled that the issue has been raised, then it is the prosecution's burden to prove beyond a reasonable doubt and to a moral certainty that that defense is not raised or that that defense does not apply in this case.

So, let's take a look at the scales in this case. Let's take a look at the burden, let's take a look at what the Government has proven. The Government has not proven that SrA Vasquez was not under duress at the time that he committed these offenses.

The defense made similar statements throughout its argument.

On rebuttal, the Government reasserted that the defense had not raised the defense of duress. The Government explained as follows:

Defense tells you that once the duress issue is raised, the burden switches to the prosecution. The judge is going to tell you the issue has been raised. There is a big difference coming into the courtroom during *voir dire* and saying, "Okay, now the issue is raised; I have said 'duress.'" Obviously just coming in in *voir dire* and saying "duress" during *voir dire* raises the issue in one sense. The Military Judge is going to tell you that the evidence has raised the issue of defense [sic], but there is a big, big difference between raising it as in "it has been brought up," as in "it is something you should consider," and the Accused has established a *prima facie* case of it, that now the prosecution must rebut. There is a big difference there. There is a big difference between saying it's an issue that we are going to have to consider and resolve and there is some time being spent on it and saying, "There's been evidence

presented that the Accused had a reasonable fear; there's been evidence presented that it was fear of immediate bodily harm or death; there's been evidence presented that there were no alternatives left open to the Accused but to commit the offense. There has been evidence presented that the Accused acted as a reasonable person under the circumstances would have done; now Government, disprove that." Those are two separate and distinct things and that is the concept the Government wants to make sure that you understand[.]

The military judge instructed the members as follows:

Now, the evidence has raised the issue of duress in relation to the offenses of bigamy and signing a false official document. Duress means compulsion or coercion. It is causing another person to do something against his or her will by the use of either physical force or psychological coercion.

To be a defense, the amount of duress used on the Accused, whether physical or psychological, must have been sufficient to cause a reasonable fear that if he did not commit the offenses he would be killed or suffer serious bodily injury. The amount of coercion or force must have been sufficient to have caused a person of normal strength and courage to give in. The fear which caused the accused to commit the offenses must have been fear of immediate death or serious bodily injury, and not simply fear of injury to reputation or property. The threat and resulting fear must have continued throughout the commission of the offenses. If the Accused had a reasonable chance to avoid committing the offenses without subjecting himself to the threatened danger, the defense of duress does not exist.

Now, you should consider here the opportunity, or lack of opportunity, the Accused may have had to report the threat to the authorities, and whether the Accused reasonably believed that a report would protect him from the threatened danger.

In deciding whether the Accused was under duress you should consider all the evidence presented on this matter.

The burden is on the prosecution to establish the Accused's guilt beyond a reasonable doubt. Duress is a complete defense to the offenses of bigamy and signing a false official document. If you are convinced beyond a reasonable doubt that the Accused did not act under duress, the defense of duress does not exist.

## DISCUSSION

■■■ The military judge is required to instruct the members on the defense of duress "[w]hen [the] defense is reasonably raised by some evidence[.]" *United States v. Williams,* 21 MJ 360, 362 (CMA 1986). We hold that the evidence the defense introduced was insufficient to raise the defense of duress, as set forth in the Manual for Courts–Martial, United States (1995 ed.), with regard to Ms. Boy, Ms. Acar, or Mr. Sert.

The background to the Manual's duress defense is set forth in the common law. As Thomas Hobbes stated:

If a man by the terror of present death be compelled to do a fact against the law, he is totally excused; because no law can oblige a man to abandon his own preservation. And supposing such a law were obligatory, yet a man would reason thus: *"If I do it not, I die presently; if I do it, I die afterwards; therefore by doing it, there is time of life gained."* Nature therefore compels him to the fact.

T. Hobbes, *Leviathan,* Pt. II, ch. 27 (1651) (emphasis added), reprinted in 23 *Great Books of the Western World* 142 (1955). Duress applies if

(a) [t]he otherwise innocent defendant (b) ... had a well-grounded belief (c) in a threat of imminent (d) death or serious injury (e) from which there was no escape except through compliance with the demands of the threatener, ... (g) except where the alleged criminal act is murder.

H. Fingarette, *Victimization: A Legalist Analysis of Coercion, Deception, Undue Influence, and Excusable Prison Escape,* 42 Wash. & Lee L.Rev. 65, 67 n. 9 (1985) (emphasis in original deleted).

The duress defense is not universally followed, and the law seems to have some resis-

tance to its application. *See, e.g.*, 2 J. Stephen, *A History of the Criminal Law of England* 108 (1883) ("compulsion by threats ought in no case whatever to be admitted as an excuse for crime"); G. Fletcher, *Rethinking Criminal Law* § 10.4.2 at 829 (1978) ("text writers in the common law have resisted" this defense); Hitchler, *Duress as a Defense in Criminal Cases*, 4 Va. L.Rev. 519, 520 (1917) ("The impropriety of admitting duress as a defense in any case has been seriously asserted."). Further, the defense does not apply to justify a killing. *Id.* ("Duress or coercion is a defense to any offense except killing.").

 RCM 916(h), Manual, *supra*, recognizes duress as a defense, but it demands that certain factors be met before it is applied. The defense of duress applies when the accused has a (1) "reasonable apprehension" that (2) "the accused or another innocent person" would (3) "immediately" suffer death or serious bodily injury if the accused "did not commit the act." *Id.* A "reasonable apprehension" does not exist "[i]f the accused has any reasonable opportunity to avoid committing the act without subjecting [himself] or another innocent person to the harm threatened[.]" *Id.* When there is "some evidence" of the defense, "the prosecution shall have the burden of proving beyond a reasonable doubt that the defense did not exist." RCM 916(b).

In this instance, all the evidence shows that appellant had a "reasonable opportunity" to establish an attorney-client relationship and ask for advice or information concerning his fears of Turkish jails instead of relying upon what he had seen in a movie. Appellant did not avail himself of the chance to talk to an attorney, the American Consulate, or an individual in his chain of command. This "reasonable opportunity" to seek advice negates a "reasonable apprehension" that another innocent person would immediately suffer death or serious bodily injury.

 "The immediacy element of the defense is designed to encourage individuals promptly to report threats, rather than breaking the law themselves," and is directly related to the requirement of a reasonable apprehension of death or serious bodily harm. *See United States v. Jemmings*, 1 MJ 414, 418 (CMA 1976); *see also United States v. Biscoe*, 47 MJ 398 (1998) (sexual harassment did not constitute duress when victim did not fear for her own life or the lives of her children). It ensures a nexus or causal relationship between the threat and the wrongful act. The arrest of Mr. Sert, Ms. Boy, and Ms. Acar occurred on November 11, 1991. It was not until three days later that appellant married Ms. Boy. Thus, appellant has not introduced sufficient evidence to raise the defense of duress as set forth in the Manual.

 As to Issue II, while the prosecutor may have switched the burden of proof incorrectly in argument, the military judge's instructions correctly placed the burden on the Government and eliminated any confusion raised during argument.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, GIERKE, and EFFRON concur.