*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

——————————

## UNITED STATES
Appellee

**v.**

## John P. MATTI, Airman First Class
United States Air Force, Appellant

**No. 25-0148**
Crim. App. No. 22072

Argued November 18, 2025—Decided February 17, 2026

Military Judge: Elijah F. Brown

For Appellant: *Major Nicole J. Herbers* (argued); *Megan P. Marinos*, Esq.

For Appellee: *Major Vanessa Bairos* (argued); *Colonel Matthew D. Talcott* and *Mary Ellen Payne*, Esq. (on brief); *Lieutenant Colonel Catherine K. M. Wray*.

Judge MAGGS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge HARDY, and Judge JOHNSON joined.

——————————

Judge MAGGS delivered the opinion of the Court.

A special court-martial found Appellant guilty, contrary to his pleas, of two specifications of assault consummated by a battery against his wife in violation of Article 128(a)(3), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928(a)(3) (2018).

On appeal to the United States Air Force Court of Criminal Appeals (AFCCA), Appellant asserted that trial counsel made numerous improper statements during his argument on findings and rebuttal. *United States v. Matti*, No. ACM 22072, 2025 CCA LEXIS 72, at \*18, 2025 WL 687025, at \*6 (A.F. Ct. Crim. App. Feb. 28, 2025) (unpublished). The AFCCA reviewed this issue for plain error because Appellant had not objected to trial counsel's arguments at trial. *Id.,* 2025 WL 687025, at \*6. Finding no plain error with respect to trial counsel's arguments, and no relief warranted on the basis of Appellant's other assertions of error, the AFCCA affirmed the findings and sentence. *Id.* at \*54, 2025 WL 687025, at \*18. One judge dissented, concluding that trial counsel had engaged in misconduct amounting to plain error. *Id.,* 2025 WL 687025, at \*18 (Gruen, J., dissenting). The AFCCA did not address its jurisdiction in its opinion, but a footnote to the case heading indicates that Appellant was appealing under Article 66(b)(1)(A), UCMJ, 10 U.S.C. § 866(b)(1)(A) (2024). *Id.* at n.1, 2025 WL 687025, at n.1.

This Court specified one issue and granted one issue for review. The specified issue is "[w]hether the [AFCCA] lacked jurisdiction to review Appellant's case." The granted issue is "[w]hether trial counsel committed prosecutorial misconduct through improper bolstering, improper vouching, improper use of facts not in evidence, and shifting the burden to defense in findings argument."

We hold that the AFCCA properly exercised jurisdiction based on this Court's recent decision in *United States v. Folts*, 86 M.J. 84 (C.A.A.F. 2025). We further hold that even though trial counsel made numerous improper comments

in his argument on findings and rebuttal, these errors were harmless. We therefore affirm the decision of the AFCCA.

Despite finding no prejudicial error in this case, we are troubled by the recurring instances of improper argument at courts-martial. An Appendix to this opinion provides a non-exhaustive list of commonly violated restrictions on arguments. The Court recommends that military judges and counsel study this Appendix carefully. The Court further encourages military judges to ask counsel whether they have read and understood the Appendix before they proceed to argument.

## I. Background

The convening authority referred four specifications of assault consummated by a battery to the special court-martial. The court-martial found Appellant guilty of Specifications 2 and 3, and not guilty of Specifications 1 and 4. The military judge sentenced Appellant to a reprimand, reduction to the grade of E-1, forfeiture of $1,222 pay per month for two months, and seventy-five days of confinement for Specification 2 and fourteen days confinement for Specification 3 of the charge. The military judge ordered that the sentences of confinement run concurrently.

### A. The Specifications and the Evidence

At the time of the alleged misconduct, C.C. was Appellant's wife. Specification 2 alleged that Appellant, "on or about 21 May 2021, unlawfully pressed his knee on [C.C.'s] back, the spouse of the accused." In support of this allegation, C.C. testified that the incident occurred after she questioned Appellant about a picture of a woman on Appellant's phone. She testified that Appellant grabbed her arms and caused her to fall off a bar stool. She further testified that she hit her knee and chin on a hardwood floor. And she testified that while she was on the ground:

> He put his knee onto my back, in between my shoulder blades, and I was screaming "let go of me," and he said "no." I said "you're hurting me," and he said "I don't care." I said "you're hurting me. You're hurting me. You're hurting me," and I

> tried to kick my left leg out from under me so I
> could kind of roll out. At this point I was on my
> stomach and I said "let go of me, you're hurting
> me," and he said "if you wouldn't have resisted,
> this wouldn't have happened."

After the incident, C.C. took pictures of bruises on her legs and chin, which were admitted into evidence.

C.C.'s friend and coworker, C.S., testified that she worked with C.C. between April and June 2021, and that C.C. "came into work with a bruise on her chin once." C.S. also testified that C.C. visited her house on May 21, 2021, and told her that Appellant had physically abused her. On cross-examination, C.S. testified that C.C. was upset with her husband because he was looking at images of other women.

Specification 3 alleged that Appellant, "between on or about 1 January 2021 and on or about 31 January 2021, unlawfully bit[ C.C.]'s arm, the spouse of the accused, . . . with his mouth." C.C. testified that Appellant bit her forearm after she questioned him about a comment that he made regarding a woman they saw on television. She further testified that the bite was not playful, that it was "pretty painful," that it made her cry, and that it left a bruise lasting for one to two weeks. C.C.'s friend and coworker, S.M., testified that she noticed that C.C. "came [into work] with a few bruises" in January 2021.

Specifications 1 and 4, of which Appellant was found not guilty, alleged that Appellant unlawfully placed his forearm on his wife's neck and that he unlawfully pulled his wife's hair. These specifications were supported by C.C.'s testimony. They were not supported by photographs or the testimony of other witnesses.

## B. Arguments on Findings

As is typical, after the close of evidence, trial counsel made the opening argument on findings, trial defense counsel made a reply, and trial counsel made a rebuttal. In his reply, trial defense counsel concisely summarized the defense theory of the case as follows:

> Members[,] this case is about a relationship that
> unraveled leading to unfounded allegations.
> That's what we're here for today. We're not here
> because physical abuse occurred. We're here be-
> cause Ms. [C.C.] believes that [Appellant] dishon-
> ored their marriage because he refused to stop
> looking at adult images. We're here because that
> soured their relationship and when it hit a tipping
> point, she made a series of unsupported reports
> that didn't happen. That's why we're here today.

Trial defense counsel argued that C.C. had a motive of
"payback" because of her feeling of betrayal. He further ar-
gued that C.S. and S.M., the two corroborating witnesses
who testified that they saw C.C.'s bruises, were biased be-
cause they were C.C.'s friends.

Trial counsel anticipated this defense theory in his
opening argument and also responded to it in his rebuttal.
In so doing, trial counsel made numerous statements that
are the subject of this appeal. For example, as described
more fully below, trial counsel asserted that C.C. was "tell-
ing the truth" and was "a credible witness." Trial counsel
also asserted that trial defense counsel could rely on noth-
ing but "conspiracy theories" to impeach the testimony of
C.S. and S.M. Similar statements are quoted in the discus-
sion below.

Trial defense counsel made no objection to trial coun-
sel's argument on findings or rebuttal. The military judge
did not intervene in the argument or undertake any tai-
lored curative measures. The military judge, however, did
provide standard instructions informing the members that
"[y]ou have the duty to determine the believability of the
witnesses" and that "arguments of counsel are not evi-
dence."

### C. Review of the Findings and Sentence

The military judge sentenced Appellant on June 23,
2022. The convening authority took no action on the find-
ings and sentence. The military judge entered judgment on
July 28, 2022. Under the version of Article 66, UCMJ, in
force at that time, Appellant had no right to appeal directly

to the AFCCA because he had not received a punitive discharge and had not received a sentence of confinement for more than six months. Article 66(b)(1)(A), (3), 10 U.S.C. § 866(b)(1)(A), (3) (2018). An attorney in the Office of the Judge Advocate General of the Air Force therefore reviewed the court-martial pursuant to Article 65(d), UCMJ, 10 U.S.C. § 865(d) (2018), and concluded that there was no error.

On December 23, 2022, Congress enacted the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 544, 136 Stat. 2395, 2582 (2022). This law amended Article 66(b)(1)(A), UCMJ, allowing direct appeals from any judgment of a court-martial that includes a finding of guilty. 10 U.S.C. § 866(b)(1)(A) (2024). On May 31, 2023, the Government notified Appellant of his right to submit a direct appeal. Appellant filed a notice of direct appeal on August 11, 2023. The AFCCA considered the case, and as described above, affirmed the findings and sentence. Appellant subsequently petitioned this Court for review asserting jurisdiction under Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3) (2024).

We specified the jurisdictional issue and granted the assigned issue quoted above.

## II. Jurisdiction

In its answer to Appellant's petition for review the Government asserted that Appellant's case was final after he received a review under Article 65(d), UCMJ. Accordingly, the Government argued that the subsequent amendment of Article 66(b), UCMJ, did not apply to his case. As a result, the Government asserted that the AFCCA lacked jurisdiction and that this Court should grant review and vacate the AFCCA's decision. This Court, however, rejected the reasoning behind these arguments in *Folts*. 86 M.J. at 88. Following *Folts*, we now hold that the AFCCA had jurisdiction in this case and that we also have jurisdiction.[1]

---

[1] In its brief on the merits in this appeal, the Government no longer contests the AFCCA's jurisdiction.

### III. Improper Argument

Rule for Courts-Martial (R.C.M.) 919(a) (2019 ed.) grants trial counsel permission to open the argument on findings, grants defense counsel permission to reply, and grants trial counsel permission to reply in rebuttal. R.C.M. 919(b) then addresses the proper content of arguments with this statement: "Arguments may properly include reasonable comment on the evidence in the case, including inferences to be drawn therefrom, in support of a party's theory of the case." This case, like many before it, requires us to address the issue of what constitutes improper argument.

### A. Standards of Review

Whether a statement made during an argument on findings or sentencing is improper is a question of law that this Court reviews de novo. *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014).

"Failure to object to improper argument before the military judge begins to instruct the members on findings shall constitute forfeiture of the objection." R.C.M. 919(c). When an objection is forfeited, this Court reviews the assertion of improper comment only for plain error. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019). Plain error has occurred when (1) there was an error, (2) the error was clear or obvious, and (3) the error caused material prejudice to a substantial right of the accused. *Id.*

Under plain error review, the appellant generally has the burden of proving material prejudice. *Id.* But when an improper argument violates a constitutional right, the government has the burden of proving that the error was harmless beyond a reasonable doubt. *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019).[2] For example,

_____

[2] The Government asks this Court to overrule *Tovarchavez* in the light of the Supreme Court's decision in *Greer v. United States*, 593 U.S. 503, 508 (2021) (reviewing a nonstructural constitutional error for plain error under Fed. R. Crim. P. 52(b) without requiring the government to prove that the error was harmless beyond a reasonable doubt). We decline to consider the

a "comment by the prosecution on the accused's silence," violates an accused's Fifth Amendment right to not testify. *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (internal quotation marks omitted) (quoting *Griffin v. California*, 380 U.S. 609, 615 (1965)). Thus, "[i]t is black letter law that a trial counsel may not comment directly, indirectly, or by innuendo, on the fact that an accused did not testify in his defense." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *United States v. Mobley*, 31 M.J. 273, 279 (C.M.A. 1990)).

## B. Appellant's Assertions of Improper Argument

Appellant has asserted that trial counsel made nearly two dozen improper arguments. We have grouped the challenged comments into five categories that we discuss below.

### 1. Improper Vouching

"Argument may include comment about the testimony, conduct, motives, interests, and biases of witnesses to the extent supported by the evidence." R.C.M. 919 Discussion. But trial counsel may not "vouch[]" for the credibility of witnesses. *Voorhees*, 79 M.J. at 12. Vouching "occurs when the trial counsel 'plac[es] the prestige of the government behind a witness through personal assurances of the witness's veracity.'" *United States v. Fletcher*, 62 M.J. 175, 180 (C.A.A.F. 2005) (alteration in original) (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)). For example, in *Fletcher*, trial counsel improperly vouched for an expert witness by asserting: "It's very apparent from talking to Doctor Jain that he is the best possible person in the whole country to come speak to us about this." *Id.* (internal quotation marks omitted).

Appellant argues that trial counsel in this case crossed the line from permissible commentary into improper vouching when he made the statements such as:

---

issue in this case because we do not find any constitutional error to have occurred.

"[Y]ou have a credible witness. You have the victim, [C.C.], who came up here and took the stand and she was credible."

"[Y]ou have not been provided with any real reason to doubt the credibility of this witness. She's telling the truth. What does she have to gain by not telling the truth?"

"You know she's telling the truth."

Appellant asserts that in making these comments, trial counsel put the prestige of the Government behind C.C. and asserted his personal view that she was credible. The Government responds that the quoted statements were not improper, arguing that credibility is a fair subject to discuss and that the Government merely "flagged for the members that trial counsel would discuss [C.C.]'s credibility" and would explain "*why* the members should believe she was credible."

In addressing this issue, we recognize that trial counsel can address the issue of credibility with arguments that rely on the evidence. In *Fletcher*, for example, the Court held that it was not improper for "trial counsel to comment on [a witness's] conflicting testimony" as a ground for doubting the witness's testimony. 62 M.J. at 183. Similarly, in this case, trial counsel did not act improperly when he asked the members, in assessing C.C.'s credibility, to "[t]hink about" whether there were any "benefits for [C.C.] of reporting a domestic violence claim."

Nonetheless, we hold that the three statements quoted above were not fair commentary but instead were instances of improper vouching. Trial counsel did not limit himself to commenting on the evidence relevant to issues of credibility. On the contrary, trial counsel directly told members that a witness was credible. The quoted comments were clear and obvious errors under *Voorhees*.

## 2. Disparaging the Defense

Trial counsel may respond to a defense theory with arguments based on evidence, but trial counsel cannot use disparaging language, instead of reasoned arguments, to

make the defense case "seem fantastical." *Voorhees*, 79 M.J. at 10. For example, in *Voorhees*, the Court held that trial counsel clearly and obviously crossed the line by saying "defense counsel's imagination is not reasonable doubt." *Id.* (internal quotation marks omitted). Similarly, in *Fletcher*, the Court held that it was improper for trial counsel to disparage a defense counsel's argument as a "phony distraction" and to call the defense case "that thing they tried to perpetrate on you." 62 M.J. at 182 (internal quotation marks omitted).

In this case, Appellant argues that trial counsel also crossed the line by repeatedly accusing the defense of relying on "conspiracy theories," citing the following statements:

> "Members, the defense can get up here and come up with any conspiracy theories they want, but that is not reasonable."

> "Think about this, this grand conspiracy theory, when you have two different witnesses—what are the chances?"

> "The defense needs to get up here and say that all of these people are just lying to you; that it's all one giant conspiracy theory."

> "Members, what they're going to do with that is trying to tell you that if there's any doubt at all, if there's any conspiracy theory they can sell then you need to find him not guilty."

> "The defense can get up here and give you all sorts of doubts, all sorts of possible doubts, possible explanations, possible reasons why this might all just be a conspiracy theory."

Appellant contends that when someone uses the term "conspiracy theory" to describe an argument, the term implies the argument "is false, and that people who believe it are irrational." Appellant asserts that trial counsel's repeated use of the term therefore served only to "equate the defense with a fantastical theory" in violation of *Voorhees*. The Government responds that trial counsel did not use the term "conspiracy theory" to disparage the defense. Instead,

the Government argues, it employed the term to explain that "the only argument that the defense would be able to make to explain the evidence was a 'conspiracy theory' that all the witnesses, who did not know each other, colluded against Appellant."

We are persuaded that trial counsel's comments were improper under *Voorhees*. In common parlance, a conspiracy theory is "a theory that explains an event or set of circumstances as the result of a secret plot by usually powerful conspirators." *Conspiracy Theory*, *Merriam-Webster Unabridged Dictionary*, https://unabridged.merriam-webster.com/unabridged/"conspiracy%20theory" (last visited Feb. 6, 2026); *see also* 1 *Shorter Oxford English Dictionary* 495 (5th ed. 2002) (defining a "conspiracy theory" as "a belief that some powerful covert agency (typically political in motivation and oppressive in intent) is responsible for an unexplained event"). In the context of this case, where there were no powerful conspirators, the words "conspiracy theory" could serve only to disparage the defense without adding any argument that could not be made without using such a loaded term. We hold that the quoted statements were clear and obvious errors under *Voorhees*.

### 3. Personal Opinions

This Court has held that "[i]t is improper for a trial counsel to interject herself into the proceedings by expressing a 'personal belief or opinion as to the truth or falsity of any testimony or evidence.'" *Fletcher*, 62 M.J. at 179 (quoting *United States v. Horn*, 9 M.J. 429, 430 (C.M.A. 1980)). For example, in *Fletcher*, trial counsel improperly expressed a personal opinion by saying "it's so clear from the urinalyses that [the accused] was doing it over and over" and the accused "clearly is a weekend cocaine user." *Id.* at 180 (internal quotation marks omitted). Expressing personal opinions is improper because the members may view the opinions as evidence and, if these opinions come from a representative of the government, the members may give them great weight. *Id.*

Appellant argues that trial counsel violated the prohibition against expressing personal opinions with statements such as:

> "The allegations that you have, the narrative that you've been told, what's happened in the marriage between these two people makes sense. It rings true. There are no big missing pieces here."

> "None of it [i.e., the defense theory that all the witnesses are lying] makes sense."

Appellant asserts that trial counsel made these statements in an attempt to influence the members with the prestige of the Government and his own view of C.C.'s testimony. The Government disagrees, asserting that trial counsel "never implied that the members should find [C.C.] credible just because the prosecutor was saying so."

We hold that the quoted statements were improper. Trial counsel can ask the members to reject a defense theory or believe a witness based on reasoned arguments but cannot express opinions about the evidence. Trial counsel violated this rule in the quoted statements because he stated that testimony "rings true" and that disbelieving the witnesses would not "make[] sense." Based on this Court's decision in *Fletcher* regarding similar language, these statements were clear and obvious errors.

### 4. Burden Shifting

"The Due Process Clause of the Fifth Amendment to the Constitution requires the [g]overnment to prove the defendant's guilt beyond a reasonable doubt." *United States v. Czekala*, 42 M.J. 168, 170 (C.A.A.F. 1995) (citing *In re Winship*, 397 U.S. 358, 363-64 (1970)). Trial counsel therefore may not make comments during argument that have the effect of "switch[ing] the burden of proof" from the government to the accused. *United States v. Vasquez*, 48 M.J. 426, 430 (C.A.A.F. 1998). Trial counsel sometimes violates this prohibition by "comment[ing] on the failure of the defense to produce evidence." *United States v. Taylor*, 47 M.J. 322, 324 (C.A.A.F. 1997) (citations omitted). For example, in *Carter*, trial counsel used the words "uncontroverted"

and "uncontradicted" eleven times. 61 M.J. at 34 (internal quotation marks omitted). The Court held that, in so doing, "trial counsel improperly implied that [the accused] had an obligation to produce evidence to contradict the [g]overnment's witness" and that this implication "essentially shifted the burden of proof to [the accused] to establish his innocence" in violation of the Fifth Amendment. *Id.*

Our cases, however, have recognized that "the [g]overnment is permitted to make 'a fair response' to claims made by the defense, even when a Fifth Amendment right is at stake." *United States v. Gilley*, 56 M.J. 113, 120 (C.A.A.F. 2001) (quoting *United States v. Robinson*, 485 U.S. 25, 32 (1988)). "Under the 'invited response' or 'invited reply' doctrine, the prosecution is not prohibited from offering a comment that provides a fair response to claims made by the defense." *Carter*, 61 M.J. at 33 (citation omitted). Accordingly, a "prosecutorial comment must be examined in light of its context within the entire court-martial." *Id.*

Appellant argues the Government effectively shifted the burden of proof with the following statements:

> "You have not been provided with any reasonable explanation as to why defense just wants to get up here and say it's a lie, it's a lie, it's all lies."

> "The defense needs to get up here and say that all of these people are just lying to you."

> "What you have not been given is any reasonable explanation for where this came from, what these are about."

> "Defense hasn't given you any explanation but think about where an explanation might be of how someone might get that [bruise]."

Appellant contends that when viewed in context, trial counsel's assertion that the defense did not provide any explanation other than that the witnesses were lying was implicitly a criticism of Appellant for not providing his own testimony. The Government responds that trial counsel's arguments addressed the defense's theory of the case

without implying that Appellant had the burden of proving his innocence.

As explained above, under plain error review, any error must be clear or obvious to warrant relief. In the quoted statements above, trial counsel referred not to the absence of testimony or evidence, but to the absence of "explanation[s]." The Government offers a plausible interpretation that trial counsel's remarks were addressing a logical problem with trial defense counsel's theory rather than implicitly attempting to shift the burden to the defense to provide evidence. That said, this Court concurs with the AFCCA's observation that "trial counsel's use of the phrase 'needs to'—viewed in isolation—may appear particularly ill-advised. However, viewed in context, it is neither plain nor obvious trial counsel was shifting the burden of proof." *Matti*, 2025 CCA LEXIS 72, at *21 n.9, 2025 WL 687025, at *6 n.9. This conclusion is reinforced by the fact that defense counsel did not object to the quoted statements during the court-martial. "The absence of objection tends to indicate that the defense did not regard the prosecutor's argument as egregiously improper and is a persuasive inducement to an appellate court to evaluate the prosecutor's argument in the same light as the defense probably considered it at the trial." *United States v. Wood*, 18 C.M.A. 291, 293, 40 C.M.R. 3, 5 (1969).

### 5. Additional Grounds Asserted by Appellant

We have addressed above the most serious contentions raised by Appellant in this appeal. We have also considered all the other allegations of error that Appellant has made in his thorough briefs. Without addressing each one individually, we determine that no other plain and obvious errors occurred.

## C. Prejudice

We turn now to the issue of whether Appellant can demonstrate that the errors above caused prejudice. This Court held in *Fletcher* that when determining whether improper arguments were harmless, "the best approach involves a balancing of three factors: (1) the severity of the

misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." 62 M.J. at 184.

Having considered all the indicators of severity announced in *Fletcher* and other relevant factors, we assess the misconduct to be moderate.[3] Most significantly, the misconduct was not trivial because the improper comments were numerous and they were aimed directly at the defense theory of the case, namely, that C.C. and the corroborating witnesses should not be believed. But the misconduct was also not severe because even though trial counsel made multiple improper comments, these comments were largely repetitive and they made up but a small part of an otherwise proper argument.

Specific curative measures were absent, but we do not give this factor great weight. With respect to disparaging the defense argument as a conspiracy theory, "both defense counsel and the military judge failed to recognize [this error], indicating that neither saw the need for remedial measures at all." *United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018). In addition, we note that the military judge instructed the members that "you have the duty to determine the believability of the witnesses" and that "arguments of counsel are not evidence." Although standard instructions such as these do not always suffice to cure improper arguments, *see, e.g.*, *Fletcher*, 62 M.J. at 185, these instructions likely lessened the impact of trial counsel's

---

[3] In *Fletcher*, this Court stated:

> Indicators of severity include (1) the raw numbers—the instances of misconduct as compared to the overall length of the argument, (2) whether the misconduct was confined to the trial counsel's rebuttal or spread throughout the findings argument or the case as a whole; (3) the length of the trial; (4) the length of the panel's deliberations, and (5) whether the trial counsel abided by any rulings from the military judge.

62 M.J. at 184.

vouching for the witnesses and expressing personal opinions.

Finally, the weight of the evidence supports the Government's position that the errors caused no material prejudice. Most of the Government's improper arguments sought to convince the members that C.C. was a credible witness. But this effort was not entirely successful. The members found Appellant not guilty of the two specifications supported only by C.C.'s testimony. The members, on the other hand, found Appellant guilty of Specifications 2 and 3, which were supported both by C.C.'s testimony and by corroborating evidence. "The panel's mixed findings further reassure us that the members weighed the evidence at trial and independently assessed Appellant's guilt without regard to trial counsel's arguments." *United States v. Sewell*, 76 M.J. 14, 19 (C.A.A.F. 2017).

For these reasons, we conclude the improper arguments by trial counsel did not cause material prejudice and therefore were not plain error.

## IV. Future Preventative Measures

Following the many rules that govern trials by court-martial is difficult. Even the most conscientious counsel and experienced military judges may fall into error. Congress has recognized this problem by requiring the Judge Advocate General of each service to provide annually an explanation of measures implemented "to ensure the ability of judge advocates" both to "participate competently as trial counsel and defense counsel" and to "preside as military judges." Article 146a(b)(4)(A)(i)-(ii), UCMJ, 10 U.S.C. § 946a(b)(4)(A)(i)-(ii) (2024).

Numerous cases coming before this Court, however, reveal that the efforts to educate counsel about improper arguments have not been sufficient to eliminate them from courts-martial. For example, although this Court has held repeatedly that trial counsel may not vouch for witnesses, express personal opinions, and so forth, errors continue to occur. These continued mistakes risk harm to the accused and reflect poorly on the military justice system.

Accordingly, to help counsel and military judges to learn and follow the applicable rules, the Court has prepared the Appendix to this opinion. The Appendix contains a non-exhaustive listing of various categories of improper argument and other prosecutorial misconduct. We urge all counsel and military judges to read the Appendix and the cited cases.

We also encourage military trial judges to assist in the effort to rid improper argument from trials. The *Military Judges' Benchbook* provides that "the judge should conduct formal or informal training sessions for counsel to improve the quality of military justice." Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 1, para. 1-1.a.(1)(c) (2025). Consistent with this sensible provision, it would be appropriate for the military judge, in either a conference under R.C.M. 802 or in a session under Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2024), to ask counsel for each side whether they have read the Appendix and to remind counsel of their duties to follow the rules.

## V. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

**APPENDIX**

Because of the persistent problem of trial counsel using improper arguments during courts-martial, the Court offers the following non-exhaustive compendium of instances when this Court has identified areas of concern. Perhaps it will provide some helpful guidance regarding the types of improper argument that trial counsel must avoid, that defense counsel should consider objecting to, and that military judges ought to monitor.

**Improper Arguments in General**

1. *Expressing Personal Beliefs and Opinions.* "It is improper for a trial counsel to interject herself into the proceedings by expressing a 'personal belief or opinion as to the truth or falsity of any testimony or evidence.' " *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (quoting *United States v. Horn*, 9 M.J. 429, 430 (C.M.A. 1980)). This is because " 'when the prosecutor conveys to the [members] his personal view that a witness spoke the truth, it may be difficult for them to ignore his views, however biased and baseless they may in fact be.' " *Id.* at 180-81 (quoting *United States v. Modica*, 663 F.2d 1173, 1178-79 (2d Cir. 1981)).

2. *Engaging in Improper Vouching.* Vouching may "occur[] when the trial counsel 'plac[es] the prestige of the government behind a witness through personal assurances of the witness's veracity,' " including "the use of personal pronouns in connection with assertions that a witness was correct or to be believed." *Id.* at 180 (second alteration in original) (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)); *see also United States v. Voorhees*, 79 M.J. 5, 12 (C.A.A.F. 2019); *Horn*, 9 M.J. at 429-30 (improper to use phrase "I think" when "analyzing the evidence of record . . . and in suggesting what weight ought to be given by the court to various evidence" as such "opinions are merely a form of unsworn, unchecked testimony and tend to exploit the influence of his office" (citation modified)); *United States v. Knickerbocker*, 2 M.J. 128, 129 (C.M.A. 1977) (describing the following as "impermissible

argument": " 'I think that having listened to all of the evidence in this case, there is very little doubt, in fact in my mind there is no doubt whatsoever, that the man sitting over there at the defendant's table . . . was in fact the individual who was involved in this matter as a principal.' ").

3. *Offering Personal Views.* Trial counsel cannot make " 'substantive commentary on the truth or falsity of testimony or evidence' " or " 'comment[] on the defendant's guilt and offer[] unsolicited personal views on the evidence.' " *Fletcher*, 62 M.J. at 180 (first quoting *United States v. Washington*, 263 F. Supp. 2d 413, 431 (D. Conn. 2003); and then quoting *United States v. Young*, 470 U.S. 1, 7 (1985)). Such comments "may confuse the [members] and lead them to believe that the issue is whether or not the prosecutor is truthful instead of whether the evidence is to be believed." *Id.* at 181 (citing *Modica*, 663 F.2d at 1181).

4. *Referring to Matters Outside the Record.* When trial counsel departs from record evidence, "an accused's right of confrontation [is] abridged, and the opportunity to impeach the source [is] denied." *United States v. Clifton*, 15 M.J. 26, 29 (C.M.A. 1983). This misconduct manifests in a variety of scenarios. *See, e.g.*, *United States v. Norwood*, 81 M.J. 12, 21 (C.A.A.F. 2021) ("Arguing an inflammatory hypothetical scenario with no basis in evidence amounts to improper argument . . . ."); *Clifton*, 15 M.J. at 30 (critiquing "discours[ing] on the practices and fantasies of rapists, and . . . the attitudes of unrelated rape victims").

5. *Commenting on the Accused's Invocation of Constitutional Rights.* "[I]t is improper for a prosecutor to ask the court members to infer guilt because an accused has exercised his constitutional rights." *United States v. Carpenter*, 51 M.J. 393, 393 (C.A.A.F. 1999).

6. *Referring to an Accused's Right to Silence.* Trial counsel may not comment on an accused's exercise of the right to silence because silence cannot be used as evidence of guilt. *United States v. Clark*, 69 M.J. 438, 445-46 (C.A.A.F. 2011); Rule for Courts-Martial (R.C.M.) 919(b) Discussion;

*see also Doyle v. Ohio*, 426 U.S. 610, 618 (1976) (*Miranda*\*
warnings imply "that silence will carry no penalty"); *United
States v. Carter*, 61 M.J. 30, 32, 34 (C.A.A.F. 2005) (re-
peated references to " 'uncontroverted evidence' " of guilt
throughout closing argument was error where comments
were not "tailored to the defense credibility argument");
*United States v. Alameda*, 57 M.J. 190, 198-99 (C.A.A.F.
2002) (concluding trial counsel's argument that lack of re-
sponse between apprehension and *Miranda* reflected con-
sciousness of guilt violated Military Rule of Evidence
(M.R.E.) 304).

7. *Commenting on Invocation of the Right to Counsel.*
"By arguing that the accused's invocation of his right to
counsel was substantive evidence of his guilt, the state-
ment violated [a]ppellant's Fifth Amendment rights,
M.R.E. 301(f)(3), and [R.C.M.] 919 . . . ." *United States v.
Moran*, 65 M.J. 178, 186-87 (C.A.A.F. 2007). This is be-
cause "to many, even to those who ought [to] know better,
the invocation by a suspect of his constitutional and statu-
tory rights to silence and to counsel equates to a conclusion
of guilt that a truly innocent accused has nothing to hide
behind assertion of these privileges." *United States v.
Moore*, 1 M.J. 390, 391 (C.M.A. 1976).

8. *Commenting on Failure to Testify.* "It is black letter
law that a trial counsel may not comment directly, indi-
rectly, or by innuendo, on the fact that an accused did not
testify in his defense." *United States v. Mobley*, 31 M.J. 273,
279 (C.M.A. 1990); *see also Clifton*, 15 M.J. at 30-31; *United
States v. Webb*, 38 M.J. 62, 65-66 (C.M.A. 1993).

9. *Using the Providence Inquiry to Prove Other Offenses.*
Trial counsel cannot use an accused's "guilty plea and prov-
idence inquiry to bolster the [g]overnment's argument that
[the accused] was guilty" because, otherwise, it will "com-
pel an accused to incriminate herself in the separate crim-
inal proceeding." *United States v. Leipert*, 85 M.J. 35, 42
(C.A.A.F. 2024) (citation modified).

---

\* *Miranda v. Arizona*, 384 U.S. 436 (1966).

10. *Shifting the Burden to the Accused.* "The Due Process Clause of the Fifth Amendment to the Constitution requires the [g]overnment to prove the defendant's guilt beyond a reasonable doubt." *United States v. Czekala*, 42 M.J. 168, 170 (C.A.A.F. 1995) (citing *In re Winship*, 397 U.S. 358, 363-64 (1970)). Therefore, it is impermissible for trial counsel to "switch[] the burden of proof" in findings argument. *United States v. Vasquez*, 48 M.J. 426, 430 (C.A.A.F. 1998). For instance, "[t]his Court generally has not permitted a trial counsel to comment on the failure of the defense to produce evidence." *United States v. Taylor*, 47 M.J. 322, 324 (C.A.A.F. 1997).

11. *Making Personal Attacks.* It is error to make arguments that "unduly . . . inflame the passions or prejudices of the court members." *Clifton*, 15 M.J. at 30; R.C.M. 919(b) Discussion.

12. *Attacking Counsel.* It is "plainly improper" to "encourage[] the members to decide the case based on the personal qualities of counsel" and "attempt to win favor with the members by maligning defense counsel." *Fletcher*, 62 M.J. at 181-83. This risks "turning the trial into a 'popularity contest' and influencing the members such that they may not [be] able to objectively weigh the evidence." *Voorhees*, 79 M.J. at 10 (quoting *Fletcher*, 62 M.J. at 181). An example of this type of improper arguments occurred in *United States v. Andrews*, 77 M.J. 393, 402 (C.A.A.F. 2018) (accusing "defense counsel of not believing [the accused's] version of events").

13. *Attacking the Accused.* "Disparaging comments are . . . improper when they are directed to the [accused] himself. For example, . . . calling the accused a liar is a 'dangerous practice that should be avoided.'" *Fletcher*, 62 M.J. at 182 (quoting *Clifton*, 15 M.J. at 30 n.5); *see also Voorhees*, 79 M.J. at 11. Examples of improper disparagement include the following: *Andrews*, 77 M.J. at 402 (references to accused as a liar and "'Don Juan'"); *Knickerbocker*, 2 M.J. at 129 (characterizing the accused's testimony as a "'fairy tale,'" "'imaginative,'" and "'foolishness'").

14. *Disparaging the Defense Theory*. While trial counsel may make reasoned arguments based on the evidence, trial counsel may not use disparaging language to make "the defense theory of the case seem fantastical." *Voorhees*, 79 M.J. at 10.

15. *Public Reaction*. Trial counsel may not "appeal to a court-martial to predicate its verdict upon the probable effect of its action on relations between the military and the civilian community." *United States v. Cook*, 11 C.M.A. 99, 103, 28 C.M.R. 323, 327 (1959).

### Misstating the Facts or the Law

16. *Misstating the Facts*. " '[I]t is a fundamental tenet of the law that attorney[s] may not make material misstatements of fact in summation,' " *United States v. Andrews*, No. NMCCA 201600208, 2017 CCA LEXIS 283, at *16, 2017 WL 1506072, at *7 (N-M. Ct. Crim. App. Apr. 27, 2017) (unpublished) (second alteration in original) (quoting *Davis v. Zant*, 36 F.3d 1538, 1548 n.15 (11th Cir. 1994)).

17. *Misstating the Law*. Misstating legal principles during argument is improper. *Andrews*, 77 M.J. at 402 (misstatement of "the law when [counsel] analogized consenting to sex to enlisting in the Navy or having plastic surgery").

### Miscellaneous

18. *Associating the Accused With Other Offensive Conduct or Persons*. "It is also improper to associate the accused with other offensive conduct or persons, without justification of evidence in the record." *United States v. Nelson*, 1 M.J. 235, 238 (C.M.A. 1975) (error to liken defense witness tactics to those employed by Hitler).

19. *Citing Other Cases*. "It is unquestionably improper for counsel to argue facts of other cases to a court-martial," *United States v. Bouie*, 9 C.M.A. 228, 233, 26 C.M.R. 8, 13 (1958), or appellate opinions with facts that "closely parallel the facts" of the case being tried, *United States v. McCauley*, 9 C.M.A. 65, 66, 25 C.M.R. 327, 328 (1958); *see also Fletcher*, 62 M.J. at 183-84 (referring to Jesse Jackson,

Jerry Falwell, Jim Bakker, Dennis Quaid, Matthew Perry and Robert Downey Jr. "improperly invited comparison to other cases, the facts of which were not admitted into evidence and which bore no similarity to the [accused's] case").

20. *Citing Excluded Evidence*. The practice of citing excluded evidence is "grossly improper," *Clifton*, 15 M.J. at 30, because, as mentioned, trial counsel should limit their findings argument to the record evidence and the reasonable inferences fairly derived therefrom, *United States v. Bodoh*, 78 M.J. 231, 237 (C.A.A.F. 2019).

21. *Citing Command Policy Directives*. " 'A policy directive . . . must not be used as leverage to compel a certain result in the trial itself.' " *United States v. Pope*, 63 M.J. 68, 75 (C.A.A.F. 2006) (quoting *United States v. Fowle*, 7 C.M.A. 349, 351, 22 C.M.R. 139, 141 (1956)). Using a command policy in argument "brings the commander into the deliberation room." *United States v. Grady*, 15 M.J. 275, 276 (C.M.A. 1983). This raises "the spectre of command influence." *Id.* Similarly, during sentencing, "[t]rial counsel may not in argument purport to speak for the convening authority or any other higher authority." R.C.M. 1001(h).

22. *Diverting Members From the Evidence*. Trial counsel cannot " 'divert' a [panel] from the evidence in the case by predicting 'the consequences of the [panel]'s verdict.' " *United States v. Causey*, 37 M.J. 308, 310-11 (C.M.A. 1993) (citation omitted) (holding it "inappropriate" to argue that "the innocent-ingestion defense should be rejected to discourage other soldiers from raising it" and "improper to prey upon the personal interests of the court members as members of the military community and their concerns about the impact this defense may have on them in that role").